CENTRAL CARTAGE CO v FEWLESS

Docket No. 199433. Submitted September 8, 1998, at Lansing. Decided November 20, 1998, at 9:00 A.M. Leave to appeal sought.

Central Cartage Co. and others brought an action in the Ingham Circuit Court against Terry L. and Susan A. Fewless and others, alleging several claims, including breach of fiduciary duty by Terry Fewless, a former employee of Central Cartage. At the close of the evidence, the trial court, Peter D. Houk, J., granted the defendants' motion for a directed verdict with regard to several claims and granted the plaintiffs' motion for a directed verdict with regard to their claim for commissions paid by a third party to defendant Susan A. Fewless, doing business as SKAN Consulting, while Terry Fewless was employed by Central Cartage. The jury found that Terry Fewless did not breach his fiduciary duty to Central Cartage after his termination and returned a verdict of no cause of action with regard to the remaining counts. The plaintiffs appealed from the court's judgment and order of no cause of action consistent with the jury verdict. The defendants cross appealed from the order directing the verdict with regard to the commissions paid to SKAN.

The Court of Appeals *held*:

1. The court properly denied the plaintiffs' motion for judgment notwithstanding the verdict or a new trial. In light of the fact that an agreement not to compete did not exist between Terry Fewless and Central Cartage, reasonable minds could differ regarding the question whether, after Terry Fewless was terminated and Central Cartage knew all the relevant facts surrounding the SKAN/third-party situation, Terry Fewless and a new company he incorporated after his termination from Central Cartage, Total Quality, Inc. (TQI), were free to pursue the commissions that the third party had been paying SKAN. Reasonable minds could also differ regarding whether TQI represented a usurpation of a business opportunity rightly belonging to Central Cartage.

2. This case is not governed by *Production Finishing Corp v Shields*, 158 Mich App 479 (1987). The facts distinguish this case from *Production Finishing*.

3. The plaintiffs' motion for judgment notwithstanding the verdict was properly denied with regard to their claim that, after his termination, Terry Fewless caused a customer of Central Cartage to pull its business from Central Cartage and direct it to one of TQI's customers. Reasonable minds could differ with regard to this issue.

4. The court properly instructed the jury.

5. The court properly granted a directed verdict in favor of the defendants with regard to the plaintiffs' allegation of a conspiracy between Terry and Susan Fewless, SKAN, and TQI to obtain and use proprietary information in an attempt to usurp the plaintiffs' corporate opportunities.

6. The court erred in denying the defendants' motion for offer of judgment sanctions under MCR 2.405 on the basis that, because the defendants' offer to stipulate the entry of a judgment provided that the proposed judgment was to be paid in installments, it was not for a "sum certain" as contemplated by the court rule. The order denying the motion for offer of judgment sanctions must be reversed and the matter must be remanded for consideration of the appropriate fees to be awarded.

7. The court properly granted the plaintiffs a directed verdict with regard to their claim for commissions paid to SKAN while Terry Fewless was still employed by Central Cartage. That part of the court's judgment and order must be affirmed. However, the matter must be remanded for correction of the judgment and order to reflect that the directed verdict was not against TQI, which was not in existence at that time.

8. The directed verdict against Susan Fewless and SKAN was properly granted with regard to their conduct before Terry Fewless was terminated by Central Cartage.

9. A directed verdict was properly granted against Terry Fewless with regard to the violation of his fiduciary duty to Central Cartage by diverting from Central Cartage the commissions earned by SKAN while Terry Fewless was employed by Central Cartage.

Affirmed in part, reversed in part, and remanded.

O'CONNELL, P.J., dissenting, stated that this case is not distinguishable from *Production Finishing*, where the Court of Appeals found that the plaintiff was entitled to a judgment as a matter of law because the defendant breached his fiduciary duties by diverting a corporate business opportunity for his own personal gain. Here, the court committed error requiring reversal in limiting the plaintiffs' damages to the period that Terry Fewless was employed by Central Cartage. The impropriety of Terry Fewless' amassing of profits from his appropriation of the plaintiffs' rightful business opportuni-

ties did not cease with the termination of the employment relationship. Any commissions earned from Terry Fewless' wrongful diversion rightfully belong to the plaintiffs. The order granting the plaintiffs a directed verdict should be affirmed and the matter should be remanded for a determination of the total profits acquired as a result of the breach of fiduciary duty and usurpation of corporate opportunity.

1. APPEAL — MOTIONS AND ORDERS — JUDGMENT NOTWITHSTANDING THE VERDICT.

The Court of Appeals reviews the denial of a motion for judgment notwithstanding the verdict by viewing the evidence and all legitimate inferences that may be drawn therefrom in a light most favorable to the nonmoving party; the jury verdict must stand if reasonable jurors could honestly have reached different conclusions.

2. AGENCY — FIDUCIARY'S DUTY.

A fiduciary owes the principal a duty of good faith and may not act for personal benefit at the principal's expense during the course of the agency; all profits made in the execution of a fiduciary's agency belong to the principal; a fiduciary is accountable to the principal for any profit the fiduciary makes when the fiduciary personally acquires any pecuniary advantage from third parties by means of being the fiduciary.

3. PRETRIAL PROCEDURE — OFFERS OF JUDGMENT — WORDS AND PHRASES — SUM CERTAIN — INSTALLMENT PAYMENTS.

A written offer to stipulate the entry of a judgment that is unequivocal and for a specific amount and a specific rate of interest is a "sum certain" for purposes of MCR 2.405; the fact that a proposed judgment for a sum certain is to be payable in installments does not render the proposed judgment invalid or not for a sum certain.

*Foster, Swift, Collins & Smith, P.C.* (by *Robert E. McFarland* and *Kathryn M. Niemer*), for the plaintiffs.

*Abood Law* (by *Andrew P. Abood*), for the defendants.

Before: O'CONNELL, P.J., and WAHLS and NEFF, JJ.

NEFF, J. In this case involving allegations of a breach of fiduciary duty by an employee, plaintiffs, Central Cartage Co. (Central), CenTra, Inc., Central Transport, Inc., P.A.M. Transport, Inc. (P.A.M.), C.C. Eastern, Inc., and C.C. Southern, Inc., appeal from a judgment and order of no cause of action consistent with a jury verdict of no cause of action in favor of defendants Terry L. and Susan A. Fewless, Susan A. Fewless doing business as SKAN Consulting (SKAN), and Total Quality, Inc. (TQI). Defendants cross appeal from the trial court's directed verdict in favor of the plaintiffs regarding plaintiffs' claim for $55,000 received by SKAN from a third party while Terry Fewless was an employee of Central. We affirm in part, reverse in part, and remand.

I

Central is one of several wholly owned transportation subsidiaries of CenTra. The majority of Central's business is in the automotive industry, transporting parts from surrounding states to various automobile plants in Michigan. Because Michigan is considered an "inbound" state, one of Central's goals is to produce business going out of Michigan so that its trucks do not travel outward empty.

Terry Fewless began working for Central in 1976, eventually becoming regional vice president of automotive sales. Fewless secured Wyeth-Ayerst Laboratories (Wyeth) as a customer for Central. Wyeth produced baby formula and other nutritionals in a plant in Mason and needed to transport its products out of state; it was therefore an important account for Central. Various United States Department of Agriculture and Food and Drug Administration regulations

require that Wyeth's infant formula stay within a certain temperature range. Because Central had only "dry vans," rather than more costly steel-lined temperature-controlled trailers, Wyeth permitted Central to transport Wyeth freight only within a relatively small area. Central used cargo heaters on the trucks when needed in the winter months, with limited success.

In 1991, Fewless made a "single source" proposal to Wyeth on Central's behalf, in an attempt to obtain brokerage fees.[1] Fewless advised Central's owner/chief executive officer, Matty Moroun, of the potential for large revenues from Wyeth if Central were to obtain temperature-controlled trucks for more lengthy trips. According to Fewless, Moroun said that he was not interested, saying "That's not our type of business."[2]

In the spring of 1992, Wyeth became concerned about a potential nationwide railway strike. Representatives of Wyeth contacted Fewless for assistance in finding a temperature-controlled carrier who could handle Wyeth's freight on long interstate trips. Fewless learned that Navajo Express, one of Central's carriers for automotive parts, had a large fleet of temperature-controlled trailers and advised Navajo to contact Wyeth.[3]

---

[1] This concept, developed in the mid-1980s with the deregulation of the trucking industry, involves providing administrative/analytical expertise and brokerage services to customers. In implementing the single source concept, Central seeks to direct business to one of its affiliates, but uses other carriers when necessary.

[2] It is generally understood that temperature-controlled trailers and dry vans constitute wholly different markets.

[3] At trial, Fewless testified that he advised Moroun about the opportunity to haul additional Wyeth freight, and that Moroun knew that Fewless had recommended that Wyeth contact Navajo in this regard.

Navajo offered Fewless a commission for sending the Wyeth business its way, but Fewless declined, apparently recognizing that it would be inappropriate because he was an employee of Central. Wyeth continued to use Navajo after the railway strike ended, and Fewless' wife, Susan, set up SKAN, which received a six to seven percent commission on the Wyeth freight transported by Navajo.[4] Fewless never advised Moroun that Susan was going to be an agent for Navajo with regard to Wyeth freight or that she was receiving commission payments from Navajo.

Realizing that there was great potential for profit in the field of temperature-controlled trucking, Fewless incorporated TQI, applied for a property broker's license, and signed a lease for office space in anticipation of establishing his own third-party logistics company. Fewless testified that he did not actually solicit any business for TQI while he was an employee of Central, and this assertion was confirmed by representatives of both Wyeth and Navajo.

In early December 1992, when confronted with rumors that he had started another company, Fewless admitted that his wife had formed a company that was receiving revenues from Navajo. Fewless tendered a resignation letter to Moroun, in which he stated his intention to start his own logistics company and his desire to maintain a close relationship with Central. On December 7, 1992, Central terminated

---

[4] Conflicting evidence was presented regarding whether Navajo or Terry Fewless suggested that Susan set up SKAN. It is undisputed, however, that Susan had absolutely no prior experience in the trucking industry and that her sole duties for Navajo consisted of two to three hours a week of relatively simple paperwork. For her efforts, SKAN received over $63,000 from Navajo from April through December 1992.

Fewless' employment. Within a few months after Fewless left Central, TQI entered into written agreements with both Wyeth and Navajo.

Meanwhile, Central began losing more and more of Wyeth's business, which virtually ceased by the end of 1993. A representative of Wyeth testified regarding several temperature-related service failures that required a quarantine of its product, as well as a marked deterioration in the cleanliness of Central's trailers and poor driver attitudes. Wyeth instituted a new policy that required transportation in a temperature-controlled environment to prevent product freezing. Wyeth's position was that it would have continued to use Central or P.A.M. if they had provided temperature-controlled trailers, competitive rates, and competitive service.[5]

Plaintiffs filed a multiple count complaint against defendants, alleging breach of contract, a common-law obligation not to compete, intentional misrepresentation, innocent misrepresentation, silent fraud, conspiracy to commit fraud, interference with existing contractual relationships, interference with prospective business relations, interference with contractual relations, a right to an accounting, and breach of fiduciary duty.[6] At the close of the evidence, the trial court granted defendants' motion for a directed verdict with regard to several claims and granted plaintiffs' motion for a directed verdict

---

[5] Although Central owned a few temperature-controlled trailers, they were primarily used to transport automobile windshields, and were never offered to Wyeth.

[6] Defendants filed a counterclaim, but all counts were either voluntarily withdrawn or were the subject of summary disposition in favor of plaintiffs.

regarding their claim for $55,000 paid by Navajo to SKAN while Fewless remained employed by Central. The jury specifically found that Fewless did not breach his fiduciary duty to Central after his termination and returned a verdict of no cause of action on all remaining counts.

## II

Plaintiffs first argue that the trial court erred in denying their motion for judgment notwithstanding the verdict (JNOV) or a new trial. We disagree.

In reviewing the denial of a motion for JNOV, this Court views the evidence and all legitimate inferences that may be drawn from the evidence in a light most favorable to the nonmoving party. *Jones v Powell*, 227 Mich App 662, 676; 577 NW2d 130 (1998). "If reasonable jurors could honestly have reached different conclusions, the jury verdict must stand." *Severn v Sperry Corp*, 212 Mich App 406, 412; 538 NW2d 50 (1995).

## A

Plaintiffs insist that because the court held defendants liable for the $55,000 in commissions paid by Navajo while Fewless was employed by Central, defendants are also liable for all commissions paid by Navajo to SKAN, and later to TQI, after Fewless was terminated by Central. Specifically, plaintiffs argue that these subsequent commission payments were a mere continuation of Fewless' breach of his fiduciary duties. We disagree.

A fiduciary owes a duty of good faith to his principal and is not permitted to act for himself at his principal's expense during the course of his agency. *Pro-*

*duction Finishing Corp v Shields,* 158 Mich App 479, 486-487; 405 NW2d 171 (1987). A corollary to this rule is that all profits made in the execution of a fiduciary's agency belong to the principal *Id.* Accordingly, "[i]f an agent acquires any pecuniary advantage to himself from third parties by means of his fiduciary character, he is accountable to his employer for the profit made." *Id.* at 487; see also *Michigan Crown Fender Co v Welch,* 211 Mich 148, 159-160; 178 NW 684 (1920).

Without question, Fewless breached his fiduciary duties to Central by failing to advise that Navajo was paying SKAN commissions for Wyeth freight. However, we disagree with plaintiffs' assertion that, even after Fewless was terminated from his employment and had advised Central of the situation involving SKAN and Navajo, all future commissions also rightly belonged to Central ad infinitum. We find that, particularly in light of the fact that an agreement not to compete did not exist between Central and Fewless, reasonable minds could differ regarding the question whether, after Fewless was terminated and Central was armed with all relevant facts surrounding the SKAN/Navajo situation, Fewless and TQI were free to pursue these revenues. *SCD Chemical Distributors, Inc v Medley,* 203 Mich App 374, 382; 512 NW2d 86 (1994). Accordingly, the trial court properly denied plaintiffs' motion for JNOV.

B

Similarly, we find that reasonable minds could differ regarding the issue whether the temperature-controlled transportation brokerage company started by Fewless after his termination from Central repre-

sented a usurpation of a business opportunity rightly belonging to Central.

Plaintiffs insist that this question is governed by *Production Finishing, supra.* We find this reliance is misplaced. In *Production Finishing,* the defendant was the president of a steel polishing company that had long sought to purchase Ford Motor Company's steel polishing business. Upon learning that Ford was considering selling its polishing business, the defendant notified his employer of the opportunity and made an offer to purchase on the employer's behalf. Ford responded that it would not sell to the employer because it feared a monopoly in the area. The defendant then inquired into the possibility of purchasing the business for himself. Ford agreed, and the defendant made preparations to purchase the business without advising his employer that Ford had refused to sell to it and without stating his intention to purchase the business in his individual capacity. This Court held that the defendant breached his fiduciary duties and had diverted a business opportunity of the employer. In doing so, the Court stated that Ford's refusal to deal with the employer did not relieve the defendant fiduciary from liability when he failed to disclose the refusal to his principal. *Production Finishing, supra* at 489-490.

The facts in the present case are significantly different. Fewless repeatedly asked Moroun to consider purchasing refrigerated trailers in order to obtain longer routes and more Wyeth business. Although the evidence is conflicting, reasonable minds could find that Moroun flatly rejected the business opportunity because the trailers were too expensive and because his primary freight, automobile parts, could easily

damage the trailers. These facts distinguish this case from *Production Finishing, supra,* where the employer never wavered in its desire to obtain the business opportunity usurped by the employee.[7] Absent an agreement not to compete, Fewless was free, upon the termination of his employment, to use his skill, experience, and general knowledge to compete against Central in both the refrigerated trucking industry and the third-party logistics business. *SCD Chemical Distributors, supra* at 381.[8]

C

Plaintiffs argue that after his termination, Fewless caused Wyeth to pull its business from Central and direct it to one of TQI's customers. Our review of the record reveals ample evidence from which the jury could find that the reasons for Central's loss of Wyeth's business was a decline in service and a refusal to provide Wyeth with temperature-controlled trailers. Because reasonable minds could differ with regard to this issue as well, the trial court properly denied plaintiff's motion for JNOV.

III

Plaintiffs next challenge the jury instructions given by the trial court. Specifically, plaintiffs argue that certain special instructions tendered by them should

---

[7] Moreover, testimony was presented that although Fewless incorporated TQI and made other preparations to establish his new business, he did not solicit any customers before his termination from Central. Although some evidence presented at trial tends to refute this fact, this was a question of fact properly left for the jury's consideration.

[8] Although plaintiffs suggest that Fewless used proprietary information of Central in establishing TQI, the evidence presented at trial regarding this was conflicting. Accordingly, a grant of JNOV would have been improper.

have been given, certain special instructions tendered by defendants should not have been given, and the order in which the instructions were given caused undue confusion among the jurors. We disagree.

Generally, a trial court may give an instruction not covered by the standard instructions as long as the instruction accurately states the law and is understandable, concise, conversational, and nonargumentative. *Bordeaux v Celotex Corp*, 203 Mich App 158, 169; 511 NW2d 899 (1993). Supplemental instructions need not be given if they would add nothing to an otherwise balanced and fair jury charge nor enhance the ability of the jury to decide the case intelligently, fairly, and impartially. *Mull v Equitable Life Assurance Society*, 196 Mich App 411, 422-423; 493 NW2d 447 (1992), aff'd 444 Mich 508; 510 NW2d 184 (1994). Moreover, it is error to instruct a jury with regard to a matter not sustained by the evidence or the pleadings. *Murdock v Higgins*, 454 Mich 46, 60; 559 NW2d 639 (1997). Jury instructions are to be reviewed in their entirety, and there is no error requiring reversal if, on balance, the theories of the parties and the applicable law were fairly and adequately presented to the jury. *Mull, supra* at 423.

We agree with the trial court that many of plaintiffs' special instructions were repetitious of other instructions given to the jury. The court incorporated portions of plaintiffs' instructions regarding the duties of a fiduciary into the charge given to the jury, thus affording plaintiffs the favorable language they desired while lessening the danger of repetition. The challenged instructions tendered by defendants regarding an employee's duty not to compete and Fewless' status as an employee at will were appropri-

ate in light of the evidence presented and the theories of the parties. Moreover, we find nothing in the order of the instructions that would have rendered them unduly confusing to the jurors.

After reviewing the jury instructions in their entirety, we conclude that the trial court presented the theories of the parties and the applicable law fairly and adequately. Accordingly, reversal is not warranted on this ground.

IV

Plaintiffs next argue that the trial court committed error requiring reversal when, after directing a verdict in favor of plaintiffs regarding the $55,000 paid by Navajo to SKAN before December 7, 1992, it advised the jury as follows:

> Earlier in this case I advised you that certain matters had been resolved and were no longer for you to consider. I will now advise you that the Defendant, Susan Fewless, has been resolved out of this case and you need not consider claims that relate to Susan Fewless.

Because plaintiffs cite no authority for their position, we deem this issue abandoned. *Weiss v Hodge (After Remand)*, 223 Mich App 620, 637; 567 NW2d 468 (1997). We note, however, that the court's advisement was neutral and in no way prejudiced plaintiffs.

V

Plaintiffs argue that the trial court erred in granting defendants' motion for a directed verdict with regard to count VI, which alleged a conspiracy between Terry Fewless, Susan Fewless, SKAN, and TQI to obtain and use proprietary information in an attempt to usurp

plaintiffs' corporate opportunities regarding Navajo and Wyeth. We disagree, because no evidence was presented that would support the conclusion that Susan Fewless or SKAN ever received, or conspired to obtain, proprietary information from the other plaintiffs. Because reasonable jurors could not have honestly reached different conclusions regarding this issue, the trial court's grant of a directed verdict with regard to this count was appropriate. *Alar v Mercy Memorial Hosp*, 208 Mich App 518, 524; 529 NW2d 318 (1995).

VI

Defendants raise the following issues on cross appeal.

A

Defendants first challenge the trial court's denial of their motion for offer of judgment sanctions pursuant to MCR 2.405. We agree that the trial court erred in determining that because the proposed judgment was to be paid in installments, rather than in a lump sum, it was not for a "sum certain" as contemplated by the court rule.

MCR 2.405(B) provides that, until twenty-eight days before trial, a party may serve on his opponent a written offer to stipulate the entry of a judgment. If the opponent rejects the offer and the adjusted verdict is more favorable to the offeror than the average offer, the offering party may recover actual costs from the offeree. MCR 4.205(A).

On May 16, 1995, defendants served on plaintiffs an offer to stipulate entry of judgment of $90,000, payable in three annual installments of $30,000 at eight

percent interest. Plaintiffs responded that they did not believe the offer to be valid for two reasons: it was untimely, and it was invalid because the judgment was to be paid in installments. On July 20, 1995, defendants filed a second offer, this time offering to stipulate entry of judgment in the amount of $250,000, payable in five annual installments of $50,000 at six percent interest. Plaintiffs filed a counteroffer of judgment dated August 7, 1995, offering to stipulate the entry of a judgment in the amount of $550,000.

At issue here is the definition of "offer" found in MCR 2.405(A)(1):

> "Offer" means a written notification to an adverse party of the offeror's willingness to stipulate to the entry of a judgment in a sum certain, which is deemed to include all costs and interest then accrued. If a party has made more than one offer, the most recent offer controls for the purposes of this rule.

Few cases have addressed the question of what constitutes a "sum certain" for purposes of MCR 2.405. In *Hessel v Hessel*, 168 Mich App 390, 395; 424 NW2d 59 (1988), this Court held that, in a divorce proceeding, a proposed property settlement did not constitute a "sum certain":

> The definition of an "offer" at MCR 2.405(A)(1), quoted above, refers to the offer of a sum certain. A proposed property settlement does not offer a sum certain; it offers a division of marital property. This case is illustrative: defendant "offered" plaintiff real estate, a car, household furnishings, and certificates of deposit which would presumably vary in worth depending on when they were withdrawn. In no sense of the phrase can these items be equated with a "sum certain." Even if the worth of the property were considered a "sum" for purposes of MCR 2.405, such worth is

by no means "certain," as this case also demonstrates. Defendant valued the property he offered plaintiff at $143,200, while the trial court's valuation of that same property was approximately $108,000.

In a more recent case, *Wilkins v Gagliardi*, 219 Mich App 260, 274; 556 NW2d 171 (1996), the trial court held that a defense offer for $500 "plus costs attributable to those portions of the plaintiffs' complaint that were not dismissed" was for a "sum certain" as required by MCR 2.405.

In *Haberkorn v Chrysler Corp*, 210 Mich App 354; 533 NW2d 373 (1995), this Court addressed another aspect of MCR 2.405(A) and distinguished an offer to settle and an offer of judgment. There, the defense offer, though including the amount of $500,000, merely expressed a willingness to settle, but did not express a willingness "to stipulate to the entry of a judgment in a sum certain," as required by the court rule.

Turning to the present case, we find that defendants' offer, which was for a specific amount ($250,000), and had a specific interest amount to be applied (six percent), constitutes a "sum certain" for purposes of MCR 2.405. Further, in contrast to the situation in *Haberkorn*, *supra*, defendants were not merely presenting an offer to settle. To the contrary, they unequivocally offered to enter into a stipulation of judgment.

Nor does the fact that the proposed judgment was to be payable in installments render it invalid for purposes of MCR 2.405. Nothing in the court rule prohibits a party from presenting an offer of judgment that is to be payable over time. Moreover, MCL 600.6201(1); MSA 27A.6201(1) provides that a judge

may enter an order permitting a defendant to pay in installments any judgment previously rendered in the judge's court. Thus, even if defendants' offer of judgment did not so provide, defendants easily could have petitioned the trial court for permission to pay the judgment in installments.

Plaintiffs argue that there is no certainty that all the installments will ever be paid, or that assets of defendants will be available in the case of bankruptcy proceedings. The risk of noncollection exists, however, for virtually every money judgment. Nothing in MCR 2.405 requires that the offer of judgment be "guaranteed collectible." Further, plaintiffs remain free to pursue all legal means for the collection of an installment judgment, save garnishment. MCL 600.6245; MSA 27A.6245.

In light of the purpose of MCR 2.405, which encourages parties to seriously engage in the settlement process and avoid prolonged litigation, *Freysinger v Taylor Supply Co*, 197 Mich App 349, 354; 494 NW2d 870 (1992), we hold that the trial court erred in determining that the inclusion of installments rendered defendants' offer of judgment invalid and not for a "sum certain." Accordingly, the trial court's order denying the motion for offer of judgment sanctions is reversed and the matter is remanded for consideration of the appropriate fees to be awarded pursuant to MCR 2.405.

B

Defendants challenge the trial court's grant of plaintiffs' motion for a directed verdict in the amount of $55,000, representing payments by Navajo to SKAN before Fewless' termination from Central. We affirm

the trial court's ruling, but remand this case to the trial court for correction of its written judgment to accurately reflect the court's judgment made on the record.

The trial court ruled that plaintiffs were entitled to the commission payments paid by Navajo to SKAN while Fewless was still employed by Central. Accordingly, the court orally granted plaintiffs' motion for a directed verdict against all defendants except TQI, which, the court stated, was not in existence at the time. The court's written order, however, states that the directed verdict is against all defendants.

1

Defendants argue that the court erred in granting a directed verdict against Susan Fewless and SKAN because, at that point in the trial, they were no longer parties to the lawsuit. Specifically, defendants note that, immediately before hearing plaintiffs' motion for a directed verdict, the court had granted defendants' motion for a directed verdict with regard to all counts involving Susan Fewless and SKAN.

We find defendants' argument is without merit. The record reveals that some of the proofs at trial were taken slightly out of order to accommodate witnesses and avoid needless repetition. As a result, plaintiffs' and defendants' motions for a directed verdict were heard at the same hearing by agreement of counsel. However, it is abundantly clear that the court's grant of a directed verdict in favor of defendants Susan Fewless and SKAN was for those claims regarding actions that occurred after December 7, 1992, when Fewless was terminated from his employment with Central. The trial court properly determined that

Susan Fewless and SKAN remained parties regarding their conduct that occurred before December 7, 1992.

2

Defendants also challenge the entry of a directed verdict against Fewless and state that evidence was presented that supports the conclusion that he did not breach his fiduciary duty to Central. We disagree.

Fewless recommended that Navajo contact Wyeth regarding Wyeth's refrigerated shipping needs in anticipation of the national railway strike. When Fewless declined compensation offered to him personally by Navajo, an alternate arrangement was set up whereby Susan Fewless and SKAN would receive commissions from Navajo for the Wyeth freight. The record establishes that the only reason Navajo chose Susan Fewless as its agent was because she could consult with Fewless.

As a fiduciary, Fewless owed Central a strict duty of good faith and was not permitted to engage in activities in the course of his duties for his own benefit. *Production Finishing, supra* at 486. In violation of these duties, Fewless diverted from Central $55,000 in commissions earned during the course of his employment. Reasonable minds could not find otherwise. Accordingly, the trial court's grant of a directed verdict with regard to this issue was proper.

3

Defendant TQI seeks relief from judgment pursuant to MCR 2.612(A)(1), which provides as follows:

Clerical mistakes in judgments, orders, or other parts of the record and errors arising from oversight or omission may be corrected by the court at any time on its own initia-

tive or on motion of a party and after notice, if the court
orders it.

Because this case is on appeal, the trial court may not
amend the judgment except by order of this Court.

The purpose behind MCR 2.612(A)(1) is " 'to make
the lower court record and judgment accurately
reflect what was done and decided at the trial level.' "
*McDonald's Corp v Canton Twp*, 177 Mich App 153,
159; 441 NW2d 37 (1989) (citation omitted). Here the
written judgment does not comport with the trial
court's intended and orally expressed ruling that the
directed verdict was to be entered against all defend-
ants except TQI. We thus remand this case to the trial
court to correct the judgment to accurately reflect
what was decided by the trial court.

VII

We reverse the trial court's denial of defendants'
motion for offer of judgment sanctions and remand
for consideration of the appropriate fees to be
awarded pursuant to MCR 2.405. Also, pursuant to
MCR 2.612(A)(2), we remand this case for correction
of the trial court's written order granting plaintiffs'
motion for a directed verdict. We affirm the judgment
of the trial court in all other respects. We do not
retain jurisdiction.

Affirmed in part, reversed in part, and remanded.

WAHLS, J., concurred.

O'CONNELL, P.J. (*dissenting*). The majority opinion
adroitly distinguishes this case from *Production Fin-
ishing Corp v Shields*, 158 Mich App 479; 405 NW2d
171 (1987). I cannot join in that exercise. The facts of

*Production Finishing* are nearly identical to those of the present case. In *Production Finishing*, this Court summarized the situation as follows:

> Reasonable minds could not honestly disagree in this case. The facts indicate that plaintiff is entitled to a judgment as a matter of law. Shields breached his fiduciary duties to the corporation by diverting a corporate business opportunity for his own personal gain. Shields did so when he pursued the Ford polishing business and purchased the Ford equipment while president of Production Finishing without full disclosure to the corporation. [*Id.* at 485.]

This Court reversed the denial of the corporation's motion for judgment notwithstanding the verdict and remanded for further proceedings regarding damages for the defendant's breach of fiduciary duty and usurpation of corporate opportunity. Because the facts of *Production Finishing* are nearly identical to the facts in this case, I would do the same here.

Defendant Terry Fewless was regional vice president for automotive sales for plaintiff Central Cartage Co., which was affiliated with plaintiffs CenTra, Inc., Central Transport, Inc., and C.C. Southern, Inc. Fewless also acted as consultant for plaintiff P.A.M. Transport, Inc. Fewless was a trusted corporate officer. While working for plaintiffs, Fewless started another company in his wife's name and began diverting plaintiffs' potential business to his wife's company.[1] More specifically, Fewless was funneling corporate busi-

---

[1] Reasonable minds cannot dispute that Fewless' wife, Susan, had no experience in the trucking industry and that the profits she earned were the result of Fewless' diversion of a corporate opportunity. Susan Fewless, doing business as SKAN Consulting, was simply the vehicle Fewless used to receive the profits from his personal cultivation of his employers' potential business opportunities.

ness opportunities to his wife's company without full disclosure to his employers.[2] When confronted with rumors that he had started a new company and was diverting corporate opportunities to his wife's company, Fewless offered to resign, but was instead abruptly terminated. Shortly thereafter, Fewless entered into written contracts with plaintiffs' customers to perform essentially the same work that he had done for them during the course of his employment with plaintiffs.

This complex case[3] went to trial on June 10, 1996. After fifteen days of trial, the parties rested their respective cases. The trial court then directed a verdict for plaintiffs in the amount of $55,000. That figure represented revenues received by Fewless' wife's company during the time that Fewless worked for plaintiffs. The trial court's decision regarding the motion for a directed verdict limited plaintiffs' damages to the period Fewless was employed by plaintiffs. In my opinion, the trial court committed error requiring reversal in limiting plaintiffs' damages to the period that Fewless was their employee.[4]

Plaintiffs' damages for Fewless' breach of fiduciary duty and usurpation of corporate opportunity are not properly limited to the profits Fewless earned from

---

[2] While employed with Central Cartage, Fewless incorporated his own business, applied for his own broker's license, and entered into a lease for office space. For obvious reasons he did not disclose any of this information to plaintiffs, including Central Cartage.

[3] Although the original complaint contained numerous counts of alleged misconduct and the lower court file is extensive, in this opinion I address only the central error that occurred below.

[4] That error was then compounded by the trial court's failure to inform the jury that the court had granted a partial directed verdict for plaintiffs.

plaintiffs' customers while Fewless remained in plaintiffs' employ.

> "A corporate officer or director is under a fiduciary obligation not to divert a corporate business opportunity for his own personal gain. The rule is that if there is presented to a corporate officer or director a business opportunity which the corporation is financially able to undertake which is, from its nature, in the line of the corporation's business and is of practical advantage to it, and which is one in which the corporation has an interest or a reasonable expectancy, and if, by embracing the opportunity, the self interest of the officer or director will be brought into conflict with that of this corporation, the law will not permit him to seize the opportunity for himself. If he does, the corporation may claim the benefit of the transaction." [*Production Finishing, supra* at 485-486, quoting 18B Am Jur 2d, Corporations, § 1770, pp 623-624, and citing 19 CJS, Corporations, § 785, p 161; anno: *Fairness to corporation where "corporate opportunity" is allegedly usurped by officer or director*, 17 ALR4th 479.]

In the present case, the trial court in essence determined that Fewless diverted a corporate business opportunity from his employers for his own personal gain. Although the trial court correctly ruled that Fewless had acted adversely to the interest of his employers, the court erred in limiting the calculation of damages to cover only the time when Fewless was employed by plaintiffs. The impropriety of Fewless' amassing of profits from his appropriation of plaintiffs' rightful business opportunities did not cease with the employment relationship. Any commissions earned from Fewless' wrongful diversion rightfully belonged to plaintiffs.

"If an agent acquires any pecuniary advantage to himself from third parties by means of his fiduciary

character, he is accountable to his employer for the profit made." *Production Finishing, supra* at 487. This rule applies to transactions "consummated after the fiduciary relationship is ended, if they began during the existence of the relationship or were founded on information or knowledge acquired during the relationship." 18B Am Jur 2d, Corporations, § 1774, p 627. As our Supreme Court has stated, " 'Except with the full knowledge and consent of his principal, an agent . . . cannot . . . take advantage of the knowledge acquired of his principal's business to make profit for himself at his principal's expense.' " *Stephenson v Golden (On Rehearing)*, 279 Mich 710, 736; 276 NW 849 (1937), quoting Mechem's Outlines of Agency (1901 ed), § 148.

Once the trial court determined that Fewless acquired a pecuniary advantage for himself from plaintiffs' customers through a breach of fiduciary duty, the trial court should have awarded damages based on a determination of the total amount of profits acquired as a result of the breach.

I would affirm the trial court's decision to grant plaintiffs a directed verdict in this case, and remand to the trial court for further proceedings consistent with this opinion. Fewless is accountable to his former employers for all profits flowing from his breach of fiduciary duty and usurpation of corporate opportunity.