*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOAN GREENFIELD,

       Plaintiff-Appellant,

v

CITY OF FARMINGTON HILLS,

       Defendant-Appellee.

UNPUBLISHED
January 12, 2023

No. 357579
Oakland Circuit Court
LC No. 2018-169707-CZ

Before: M. J. KELLY, P.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting defendant's motion for summary disposition. Plaintiff also challenges the trial court's order denying plaintiff's motion for class certification. We affirm the former and do not reach the latter.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In November 2018, plaintiff filed a class action complaint against defendant, challenging the reasonableness of the rates defendant charged for water and sewer services. Defendant charges property owners in the city of Farmington Hills for water and sewer services based on their metered use of water. Plaintiff alleged that, from 2012 to 2018, defendant's water/sewer rates were set far in excess of the amount needed to pay for the actual cost of those services. Plaintiff noted that defendant's water and sewer rates included a component charge labeled "Reserves," and that defendant had accumulated a cash reserve from such billings of approximately $79 million as of July 1, 2018. Plaintiff alleged that the reserve rate charges had resulted in defendant accumulating funds far in excess of the amount necessary to be held in reserve for repair and maintenance of the water and sewer system. Plaintiff's complaint challenged the reserve rate charges in six counts: three counts alleging unjust enrichment and three counts alleging assumpsit. Of those six counts, one count of unjust enrichment and one count of assumpsit asserted that defendant's rates were arbitrary, capricious, and unreasonable under the common law; two corresponding counts asserted that defendant had violated MCL 141.91; and two other corresponding counts asserted that defendant had violated its own ordinances.

Plaintiff filed a motion for class certification on March 6, 2019, asking the trial court to certify a plaintiff class comprised of every property owner who had paid or incurred defendant's water and sewer rates beginning in 2012. Plaintiff argued that the class was sufficiently numerous, that common questions of fact or law predominated, that plaintiff's claims were representative of the claims of the class members, and that plaintiff would fairly and adequately assert and protect the interests of the class. Plaintiff also argued that maintenance of the action as a class action would be superior to other methods of adjudication because of the large number of class members, the fact that the class sought equitable relief, and the fact that while the aggregated claims would justify litigation of a class action, the damages suffered by individual class members would not warrant the cost of separate litigation.

Defendant responded, arguing that plaintiff could not satisfy the requirements of MCR 3.501(A)(1) for a class action. Defendant argued that its cash reserves were required to keep the system in good repair and working order, as well as anticipated capital replacements during the next five years; defendant also asserted that the reserve funds were restricted funds that could only be used to pay for water or sewer services. Therefore, defendant argued, plaintiff could not demonstrate that any members of the putative class had suffered any damages. Moreover, defendant argued that plaintiff's claims were not typical of the class, that plaintiff could not adequately protect the interests of the class, and that her claims were contrary to the best of interests of the other ratepayers.

After a hearing on plaintiff's class certification motion, the trial court took the matter under advisement. The trial court then issued an order denying plaintiff's motion for class certification in December 2019, stating in relevant part:

> Class certification must be denied because plaintiff has failed to satisfy the five factors required pursuant to MCR 3.50l(A)(l). Plaintiff has not shown that the proposed class members have suffered any actual injury. In addition, the court finds that under the facts presented, it is not probable that the amount which may be recovered by individual class members will be large enough in relation to the expense and effort of administrating the action to justify a class action.

Plaintiff moved for reconsideration, which the trial court denied. Plaintiff applied for leave to appeal in this Court, which this Court denied.[1]

Plaintiff's case continued as an individual action, and the parties conducted extensive discovery.[2] In March 2021, defendant moved for summary disposition under MCR 2.116(C)(8) and (10). Defendant argued that its rates were set as part of its Capital Improvements Plan (CIP)

---

[1] See *Greenfield v City of Farmington Hills*, unpublished order of the Court of Appeals, entered July 1, 2020 (Docket No. 353010).

[2] In early 2021, counsel for nonparties Oakland County Water Resources Commissioner and County of Oakland filed an appearance in the case and sought a protective order related to some of plaintiff's nonparty discovery requests, which the trial court granted. Plaintiff does not challenge the trial court's discovery rulings regarding these nonparties, and they are not parties to this appeal.

and that "substantial parts of the water and sanitary sewer system have reached or are nearing the end of their useful life" and would soon require extensive replacement and repairs. Defendant argued that, according to the city and county officials and professional engineers, its capital reserves were not only necessary, but were in fact insufficient to meet the next five years of capital investment required to maintain the water and sewer system. Further, defendant argued that its water and sewer rates were a fee and not a disguised tax. Defendant supported its motion with several affidavits. These included an affidavit from Carrie Ricker Cox, the Chief Engineer for the Oakland County Water Resources Commissioner's Office (OCWRC). In her affidavit, Cox averred that, as of April 2019, the replacement cost of defendant's water and sewer system's "horizontal" assets (e.g., water mains and sanitary gravity mains) exceeded $1.225 billion, and the replacement cost of "vertical" assets (e.g., storage tanks) exceeded $61 million. Cox also averred that

> [a]s of April 22, 2019, the estimated capital expenditure for horizontal assets, alone, required to maintain the desired level of service for the City's water and sewer systems over the five year time period of 2019-2023 is more than $38 Million, over the ten year time period of 2019-2028 is more than $65 Million, and over the twenty year time period of 2018-2037 is more than $134 Million.

Defendant's motion was also accompanied by an affidavit from Karen Mondora, the Director of defendant's Public Services Department. Mondora's affidavit provided an explanation of how defendant's water and sewer system operated and how its assets were managed, including federal grant funds. Mondora averred in her affidavit that the defendant had recognized that substantial repair and replacement of the water and sewer system would be needed in the next five-to-ten years and had adjusted its rates accordingly; she further noted that the reserve funds were earmarked and restricted for this purpose only. Mondora opined that, based on her experience "the practice of gathering reserves a little bit at a time to pay for a substantial amount of looming required capital improvements to the system that the City knows are on the not-too-distant horizon smooths the rates into more predictable bills and is therefore more desirable" to the users of the system, as compared to "foisting much larger fees on water bills whenever an emergency repair or major system capital improvement needs arise." Mondora further noted that defendant and the OCWRC were in the process of implementing necessary capital improvements to the system and opined that "[a]lthough we prefer and it is our plan to pay cash using the reserve fund for most of those projects, it is likely the City will also need to incur some bonded indebtedness." Steven Barr, defendant's Finance Director and Treasurer, similarly stated in an affidavit that "the City of Farmington Hills reserves as of June 30, 2018 were insufficient to cover the cost of known capital improvement requirements, along with required maintenance needs and necessary reserves to fund daily operational needs."

Defendant also accompanied its motion with a summary of its Wastewater Asset Management Plan, which includes the CIP, as well as numerous communications with the Michigan Department of Environmental Quality (MDEQ) concerning corrective action plans for defendant and Oakland County in order to comply with several administrative consent orders, and copies of those orders. Defendant also attached extensive documentation related to its water and sewer funds, city real property taxes, city ordinances related to the water and sewer system and associated charges, and Oakland County water and sewer regulations. Defendant also provided the report of its retained water and sewer financing expert, Eric P Rothstein, which contains

Rothstein's opinions, as well as the data upon which he based those opinions, that (1) defendant's water and sewer rates were and are reasonable, (2) defendant's rates are in line with similar rates charged for similar water and wastewater systems in other communities in Michigan and nationwide, (3) defendant's use of a reserve system to finance the renewal and replacement of its water and sewer system lines was preferable to the use of debt financing, (4) defendant's "reserve practices are reasonable and appropriate" and the reserve levels were not excessive, and (5) plaintiff's allegations merely represented a personal opinion regarding the appropriate amount of reserve funds defendant should possess.

Plaintiff responded, arguing that the rates charged by defendant were unreasonable as a matter of law, or in the alternative that the determination of reasonableness was generally a question of fact to be left to the jury. Plaintiff also argued that her expert contradicted the opinions of defendant's experts, resulting in, at best, a question of fact. Plaintiff's motion was accompanied by a report prepared by John Farnkopf and Rick Simonson[3] of HF&H Consultants, LLC (a water, wastewater, and stormwater consulting service). Plaintiff's experts opined that defendant had charged unreasonably high overall rates, and that the reserve fund balance had exceeded a reasonable target balance every year since 2012; further, plaintiff's experts opined that defendant had accumulated an unreasonably high reserve fund balance as of June 30, 2018. Plaintiff also argued that the alleged overcharge constituted a tax in violation of MCL 141.91.

The trial court held a hearing on defendant's motion in June 2021. Plaintiff argued that, as a matter of law, defendant's reserve rate charges were an impermissible tax, because defendant was not permitted to impose charges to finance capital improvements that would result in defendant fully recouping its investment in a period significantly shorter than the useful live of the improvements. Plaintiff also argued that she had shown that defendant's rates as a whole were excessive and therefore had established at least a genuine issue of material fact as to their reasonableness, noting that the parties had presented differing expert opinions on the issue. Defendant argued that it had demonstrated that the funds collected and the rates charged were reasonable and for a proper purpose. Defendant also noted that plaintiff's expert, in his deposition, had conceded that defendant's fees would be reasonable as long as they were necessary for capital improvements that were to be done over the next ten years.

The trial court took the matter under advisement. It subsequently issued a written opinion and order granting defendant's motion for summary disposition. The trial court held that plaintiff had failed to provide proof that defendant had collected the funds at issue for any improper purpose. The court also noted that plaintiff's experts had failed to "review and consider the actual capital improvement needs of the City's water and sewer system and all of Defendant's asset management plans and materials, administrative consent orders and intended use of the reserve funds" and concluded that "[p]laintiff cannot create an issue of fact by having her expert review only a subset of facts to come up with an opposing opinion." Further, the court noted that plaintiff's expert had concluded that defendant's reserve funds would be reasonable if used within ten years. The trial court therefore concluded that plaintiff had failed to support any of her claims.

---

[3] Farnkopf and Simonson were also deposed during discovery.

This appeal followed. At the outset, we note that plaintiff's statement of questions presented on appeal consists of sixteen separately-numbered questions, but the argument section of plaintiff's brief does not contain separate sections or subsections for each question. Plaintiff's arguments fall into three broad categories: (1) the trial court erred by dismissing plaintiff's unjust enrichment and assumpsit claims, because defendant's water and sewer rates were unreasonable, (2) the reserve portion of defendant's water and sewer rates constituted an illegal tax, and (3) the trial court erred by denying class certification.

## II. PLAINTIFF'S COMMON-LAW UNJUST ENRICHMENT AND ASSUMPSIT CLAIMS[4]

Plaintiff argues that the trial court erred by holding that plaintiff had failed to establish at least a genuine issue of material fact regarding the unreasonableness of defendant's water and sewer rates. Specifically, plaintiff argues that she presented evidence that defendant's water and sewer rates during the relevant time period were in excess of the amounts necessary to finance the actual costs of providing those services, and that the cash reserves accumulated by defendant were far in excess of the amount necessary to support the city's water and sewer system, even accounting for necessary capital improvements. Plaintiff also argues that the reasonableness of utility rates is generally a question of fact and that she met her burden of providing "clear evidence of illegal or improper expenses" included in defendant's rates. We disagree.

Plaintiff, in her complaint, presented claims of unjust enrichment and assumpsit related to defendant's water and sewer rates. These common-law claims are equitable claims that this Court reviews de novo. *Youmans v Charter Twp of Bloomfield*, 336 Mich App 161, 211; 969 NW2d 570 (2021). We also review de novo the trial court's decision on a motion for summary disposition. *Zarzyski v Nigrelli*, 337 Mich App 735, 740; 976 NW2d 916 (2021). A party is entitled to summary disposition under MCR 2.116(C)(10) when the evidence does not present a genuine issue of material fact. *Jewett v Mesick Consol Sch Dist*, 332 Mich App 462, 470; 957 NW2d 377 (2020). "A genuine issue of material fact exists when the record, viewed in the light most favorable to the nonmoving party, leaves open an issue upon which reasonable minds might differ." *MacDonald*

---

[4] As noted, all six counts of plaintiff's complaint are presented as unjust enrichment or assumpsit claims. Moreover, in opposing summary disposition in the trial court, plaintiff specifically acknowledged that all of her claims were "grounded in principles of assumpsit and unjust enrichment." This includes her claims that are premised on alleged violations of MCL 141.91 and defendant's ordinances. This section of our opinion is limited, however, to Counts I and IV of plaintiff's complaint, which allege unjust enrichment and assumpsit independent of any alleged violation of statute or ordinance. Further, on appeal, plaintiff does not present a separate argument concerning defendant's alleged violation of its own ordinances (Counts III and VI of her complaint); rather, plaintiff argues in a footnote that defendant's alleged violation of its ordinance requiring that sewer service rates be "sufficient to provide for debt service and for the expenses of operation, maintenance, and replacement as necessary to preserve the same in good repair and working order" demonstrates that its rates are unreasonable. Because plaintiff has not provided a detailed argument concerning defendant's alleged violation of its ordinance, we do not address this issue in depth, and leave the trial court's ruling concerning Counts III and VI undisturbed. See *Central Cartage v Fewless*, 232 Mich App 517, 529; 591 NW2d 422 (1998) (noting that this Court is not obligated to search for authority to support a party's argument on appeal).

*v Ottawa Co*, 335 Mich App 618, 622; 967 NW2d 919 (2021) (quotation marks and citation omitted). "The reviewing court should evaluate a motion for summary disposition under MCR 2.116(C)(10) by considering the substantively admissible evidence actually proffered in opposition to the motion." *Jewett*, 332 Mich App at 470 (quotation marks and citation omitted). This includes pleadings, affidavits, admissions, and depositions, along with other evidence submitted by the parties. *Walega v Walega*, 312 Mich App 259, 265-266; 877 NW2d 910 (2015). We review de novo the interpretation of statutes and ordinances. *Youmans*, 336 Mich App at 211.

Historically, at common law, an action for assumpsit was "a proper vehicle for recovering unlawful fees, charges, or exactions—including unlawful utility charges—that the plaintiff had paid to a municipality under compulsion of local law." *Id.* at 213 (citation omitted). However, after assumpsit was abolished as a form of action in Michigan in 1963, an assumpsit claim became "modernly treated as a claim arising under 'quasi-contractual' principles which represent 'a subset of the law of unjust enrichment.' " *Youmans*, 336 Mich App at 213-214, quoting *Wright v Genesee Co*, 504 Mich 410, 421; 934 NW2d 805 (2019). We therefore treat plaintiff's assumpsit claims as unjust-enrichment claims.

"Unjust enrichment is a cause of action to correct a defendant's unjust retention of a benefit owed to another." *Wright*, 504 Mich at 417. In order to sustain a claim for unjust enrichment, "a plaintiff must establish (1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 195; 729 NW2d 898 (2006). The remedy for unjust enrichment is restitution, i.e. the return of the excessive or unjust benefits retained by defendant. *Wright*, 504 Mich at 419.

In cases involving municipal ratemaking, there is a rebuttable presumption that a municipality's utility rates are reasonable. *Youmans*, 336 Mich App at 214. In order to succeed on a claim for unjust enrichment, a plaintiff must rebut this presumption by both (1) presenting clear evidence of illegal or improper expenses included in a municipal utility's rates and (2) after presenting such evidence, demonstrating that the rates, viewed as a whole, are unreasonable, i.e., excessive. *Youmans*, 336 Mich App at 217-218, citing *Trahey v Inkster*, 311 Mich App 582, 594, 597-598; 876 NW2d 582 (2015). Absent clear evidence of illegal or improper expenses included in a municipal utility's rates, a court has no authority to disregard the presumption of reasonableness. *Trahey*, 311 Mich App at 595. Even if such an illegal or improper expense is included in a municipal utility's rates, a plaintiff is still required to demonstrate that "the disputed rates actually overcharged plaintiff . . . for the related water and sewer services." *Youmans*, 336 Mich App at 219.

The heart of plaintiff's common-law claims is the allegation that defendant's water and sewer rates were unreasonable during the relevant time period (July 1, 2012 through July 1, 2018). We agree with the trial court that plaintiff failed to rebut the presumption of reasonableness. Defendant's experts opined that defendant's water and sewer rates, as a whole, were proportionate to the rates charged by similarly-sized retail water and wastewater systems both in Michigan and nationwide. Plaintiff's experts did not address the issue of whether defendant's rates, as a whole, were excessive; in fact, plaintiff's experts admitted that they had not conducted a comprehensive rate study. Rather, plaintiff's experts based their conclusion that defendant's rates were unreasonable solely on their opinion that the rates had resulted in an excessively large reserve fund.

In *Youmans*, this Court noted that "without a comprehensive rate study—or some similar evidence demonstrating that the disputed rates excessively compensated the Township for the related utility services—one can at best speculate about whether the disputed rates were proportional to the underlying costs." *Youmans*, 336 Mich App at 220. This Court also noted that several experts had reviewed the defendant's financial statements and determined that its "cash inflows and outflows over the disputed period were proportional." *Id.* Although plaintiff argues that her experts provided evidence that the disputed rates excessively compensated defendant by analyzing the growth of the reserve fund, her experts specifically noted that they did not perform "a comprehensive review of the City's rate-making process." The HF&H report only notes the actual costs incurred by defendant in operating its water and sewer system for one year, the fiscal year 2017-2018, and does not analyze cash inflows for any of the years in question. Further, the report does not analyze defendant's overall cash flow related to the water and sewer system; rather, plaintiff's expert's analysis is limited to the growth of defendant's reserve funds.

In plain language, plaintiff argues that defendant must be overcharging for water and sewer services because an account associated with that system has too much money it. We are unconvinced that the former must necessarily be inferred from the latter. In the absence of a more comprehensive review of cash inflows and outflows associated with the water and sewer system, it appears that plaintiff is, at best, speculating about the proportionality of the rate as a whole. See *Youmans*, 336 Mich App at 220. This Court in *Youmans* agreed with the defendant's position that "even if a *specific* expense that is included in formulating a challenged municipal utility rate is shown to be either illegal or improper, the plaintiff nevertheless bears the burden of both rebutting the presumption of reasonableness and proving that the disputed rates are unreasonable when viewed as a *whole*." *Id.* at 218. Plaintiff's claims for unjust enrichment depend on "whether the water and sewer rates, viewed as a whole, were unreasonable inasmuch as they were "excessive," not on whether some aspect of the Township's ratemaking methodology was improper." *Id.* at 219. In the absence of a more holistic analysis of defendant's rates, we conclude that plaintiff, even if she could carry her burden of showing that the reserve portions of the challenged rates were illegal or improper, did not carry her burden of proving that the overall rates were unreasonable. The trial court therefore did not err by granting defendant's motion for summary disposition with respect to those claims.

Further, we agree with the trial court that plaintiff has not carried her burden of showing that the reserve portion of defendant's sewer rates was illegal or improper. We note at the outset that plaintiff's allegation that defendant lacks a written reserve fund policy, even if true, does not resolve the issue. Defendant is not required by law or ordinance to have such a written policy, or to adhere to a particular ratemaking approach or guidelines. Moreover, defendant is not required by law or ordinance to have a specific plan for capital improvements equivalent to the amount in the reserve fund, so long as the funds are earmarked and restricted for use in maintaining the water and sewer system.

Plaintiff's experts agree, in general, that defendant is permitted to maintain a reserve fund for maintenance and repair of its sewer system. Public utilities commonly maintain capital reserves to provide fiscal stability. See *Jackson Co v City of Jackson*, 302 Mich App 90, 111; 836 NW2d 903 (2013). Instead, plaintiff and her experts argue that defendant's reserve fund is excessively high. Plaintiff's experts base their opinion on expenses incurred by defendant for capital improvements in the years 2012 through 2018, and defendant's projections for capital

-7-

improvement expenses through 2023. But, as noted by the trial court, plaintiff's experts did not review and consider the actual capital improvement needs of defendant's water and sewer system, and did not opine on necessary capital improvements over the next ten years. Further, Farnkopf agreed at his deposition that "reserves are all about managing risk and that is a subjective question" upon which opinions might differ. Defendant offered substantial evidence that its cash reserves were necessary to fund large-scale necessary maintenance, repair, and replacement of both the horizontal and vertical assets in its water and sewer system; this evidence was not refuted by plaintiff's experts, who focused much more narrowly on the balance of the reserve fund compared to *past* capital improvement expenditures and the limited amount of capital-improvement projects that were already in the process of being implemented in the near future and funded by the reserve fund.

On the whole, the evidence showed that defendant had inspected its water and sewer system and had determined that substantial repairs, maintenance, and replacement would be necessary in the near future. There was also testimony that defendant's reserves would possibly be insufficient to meet those needs. This testimony was not refuted by plaintiff; as the trial court noted, plaintiff's experts' narrow focus on the reserve fund balance failed to take into account numerous other factors that would impact the determination of whether defendant's reserve rates were illegal or improper.

In general, "rate-making is a legislative function that is better left to the discretion of the governmental body authorized to set rates." *Novi v Detroit*, 433 Mich 414, 427; 446 NW2d 118 (1989). "Courts of law are ill-equipped to deal with the complex, technical processes required to evaluate the various cost factors and various methods of weighing those factors required in rate-making." *Id.* at 430, In the absence of a complete review of defendant's rate-making process, or the need for large-scale repairs or replacement of assets in the near future, plaintiff's allegation that defendant's water and sewer rates are unreasonable is speculative. Mere speculation is insufficient to survive summary disposition. See *Skinner v Square D Co*, 445 Mich 153, 164; 516 NW2d 475 (1994). Plaintiff failed to rebut the presumption of reasonableness, and the trial court properly granted defendant's motion for summary disposition on plaintiff's common-law assumpsit and unjust-enrichment claims. *Zarzyski*, 337 Mich App at 740.

## III. VIOLATION OF MCL 141.91

Plaintiff also argues that the trial court erred by not holding that the portions of defendant's water and sewer rates that represent what plaintiff alleged to be an overcharge were a disguised tax in violation of MCL 141.91. We disagree. We review de novo the interpretation of statutes and ordinances. *Youmans*, 336 Mich App at 211.

MCL 141.91 provides: "Except as otherwise provided by law and notwithstanding any provision of its charter, a city or village shall not impose, levy or collect a tax, other than an ad valorem property tax, on any subject of taxation, unless the tax was being imposed by the city or village on January 1, 1964." At the outset, we note that challenges to a utility fee on the ground that it is a disguised tax, rather than a fee, are generally brought under the Headlee Amendment, Const 1963, art 9, § 31, which provides in pertinent part:

> Units of Local Government are hereby prohibited from levying any tax not authorized by law or charter when this section is ratified or from increasing the rate

of an existing tax above that rate authorized by law or charter when this section is ratified, without the approval of a majority of the qualified electors of that unit of Local Government voting thereon . . . .

Plaintiff has not, however, brought a claim under the Headlee Amendment. Nor has she argued that MCL 141.91 provides a separate cause of action or provides her with a private right of action. Instead, she brings unjust enrichment and assumpsit claims premised on a claimed violation of MCL 141.91, yet relies upon Headlee challenge cases for her analytical framework. See *Bolt v Lansing*, 459 Mich 152; 587 NW2d 264 (1998). And, as defendant points out, plaintiff's complaint did not reference the Headlee Amendment or articulate the elements of a claim, even if cognizable, under MCL 141.91. But plaintiff did allege in her complaint that defendant had violated MCL 141.91 by imposing "disguised taxes that are not ad valorem property taxes" after 1964, and therefore was liable under unjust enrichment and assumpsit theories. Because, as we will discuss, plaintiff's claim fails in any event, we need not decide whether plaintiff sufficiently pleaded a valid cause of action in Counts II and V, but we note that plaintiff did not analyze or argue that MCL 141.91 provides a private right of action, and nothing in this opinion should be taken as this Court's holding that such a cause of action exists.

Plaintiff argues that the analytical framework articulated in *Bolt* applies as easily to her claim as it does to a claim under the Headlee Amendment, while defendant argues that we should apply a pre-*Bolt* common-law analysis to plaintiff's claim. We find it unnecessary to resolve this issue, because even granting plaintiff the analytical framework of her choice, it is clear that the trial court did not err by rejecting her claims under MCL 141.91.

"Although the levying of a new tax without voter approval violates the Headlee Amendment, a charge that constitutes a user fee does not." *Youmans*, 336 Mich App at 226 (citations and quotation marks omitted). In *Bolt*, our Supreme Court set forth a three-prong test for determining whether a municipal charge represents a user fee or a tax: (1) "a user fee must serve a regulatory purpose rather than a revenue-raising purpose"; (2) "user fees must be proportionate to the necessary costs of the service"; and (3) a user fee is voluntary in that users are "able to refuse or limit their use of the commodity or service." *Bolt*, 459 Mich at 161-162. "These criteria are not to be considered in isolation, but rather in their totality, such that a weakness in one area would not necessarily mandate a finding that the charge is not a fee." *Youmans*, 336 Mich App at 226 (citation omitted). The party challenging a utility rate bears the burden of establishing that it is a tax and not a user fee. *Id.* at 225. The presumption of reasonableness is a "pertinent" consideration when considering whether a user fee is proportionate to the necessary costs of the service. *Id.* at 227-228 (citation omitted).

As discussed in *Youmans*, this Court has held that a water and sewer rate that includes an assessment for future capital improvements, repairs, and maintenance "serves a regulatory purpose" notwithstanding the fact that it may generate revenue in support of that purpose, or even result in a surplus for the fiscal year. See *Youmans*, 336 Mich App at 228, quoting *Shaw v Dearborn*, 329 Mich App 640, 666; 944 NW2d 153 (2019). Here, as in *Youmans*, there was undisputed evidence presented that the contested rates were assessed to fund the operation and capital improvements of defendant's water and sewer system, including defendant's obligations under various administrative orders and corrective action plans with the MDEQ. *Id.* at 606. We therefore similarly conclude that the challenged rates primarily serve valid regulatory purposes under the first *Bolt* factor.

Regarding the second *Bolt* factor, as discussed, plaintiff has not established even a question of fact regarding whether defendant's rates were disproportionate. As noted in *Bolt*, "[m]athematic precision is not required when reviewing the reasonable proportionality of a utility fee." *Bolt*, 459 Mich at 164-165. Further, a valid user fee can include "some capital investment component" as well as the actual costs of use. *Id.* The second *Bolt* factor also favors defendant's position.

Regarding the third *Bolt* factor, the challenged rates here are comprised of numerous component charges that are aggregated into an overall charge per 1,000 cubic feet of water used. However, there is also a minimum amount charged regardless of water usage; further, defendant's ordinances require all dwellings to be connected to the water and sewer system. Therefore, defendant's rates are not entirely "voluntary" because a property owner cannot entirely avoid them by refusing to use any water or disconnecting from the system. See *Youmans*, 336 Mich App at 232. The rationale of *Youmans* is equally applicable to the challenged rate in this case; we conclude that "at least the fixed portion of the disputed rates . . . is effectively compulsory." *Id.* at 232.[5] The third *Bolt* factor therefore at least somewhat favors plaintiff's position. However, the mere "lack of volition does not render a charge a tax, particularly where the other criteria indicate the challenged charge is a user fee and not a tax." *Wheeler v Shelby Charter Twp*, 265 Mich App 657, 666; 697 NW2d 180 (2005).

Considered in their totality, *Youmans*, 336 Mich App at 226 (citation omitted), plaintiff has failed to carry her burden of showing that the challenged rates are impermissible taxes rather than valid user fees, even assuming that her chosen analytical framework applies to her claims asserting a violation of MCL 141.91. The trial court therefore did not err by granting defendant's motion for summary disposition on these claims.

In conclusion, the trial court did not err by granting defendant's motion for summary disposition and dismissing plaintiff's claims. *Zarzyski*, 337 Mich App at 740. Plaintiff did not carry her burden of showing that defendant's rates were unreasonable or constituted an illegal tax. Because we affirm the trial court's grant of summary disposition, we need not address plaintiff's arguments concerning the denial of class certification.

Affirmed. As the prevailing party, defendant may tax costs. MCR 7.219(A)(1).

/s/ Michael J. Kelly
/s/ Mark T. Boonstra
/s/ Brock A. Swartzle

---

[5] It is, however, not clear from the record whether any portion of the fixed minimum charge goes to the reserve fund.