*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JACOB BRANHAM,

Plaintiff-Appellee,

v

JANET BRANHAM,

Defendant-Appellant.

UNPUBLISHED
November 30, 2023

Nos. 366008; 366798
Wayne Circuit Court
Family Division
LC No. 19-112577-DM

Before: O'BRIEN, P.J., and K. F. KELLY and M. J. KELLY, JJ.

PER CURIAM.

These appeals stem from the parties' dispute regarding custody of their child, NB. In Docket No. 366008, defendant appeals as of right an opinion and order granting plaintiff's motion to change NB's domicile, custody, and parenting time. In Docket No. 366798, defendant appeals by delayed leave granted[1] the trial court's sua sponte amendment of its first opinion and order. We vacate both orders and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

On October 7, 2019, defendant filed a police report alleging that plaintiff pointed a laser-sighted gun at her and NB a week earlier. On the basis of defendant's allegations, plaintiff was charged with two counts of felonious assault and two counts of felony-firearm. The day after reporting this incident, defendant secretly moved with 20-month-old NB to Huntington, Indiana, to take up residence with her parents. Plaintiff, who remained in the marital home in Allen Park, Michigan, filed a complaint for divorce shortly thereafter. The first orders concerning interim custody and parenting time were entered by stipulation in February 2020. The parties were granted joint legal custody, with temporary physical custody awarded to defendant. Plaintiff was granted supervised parenting time once a week at Growth Works. The emergence of the COVID-19

---

[1] *Branham v Branham*, unpublished order of the Court of Appeals, entered July 19, 2023 (Docket No. 366798). The order granting leave also consolidated defendant's appeals on this Court's own motion. *Id.*

pandemic in March 2020 posed a serious impediment to the intended parenting time, prompting plaintiff to move to modify the parenting-time schedule, but the parties reached a settlement before the motion was heard.

The trial court entered a consent judgment of divorce in November 2020, under which the parties shared joint legal custody, defendant retained primary physical custody, and plaintiff was awarded supervised parenting time. The judgment ordered plaintiff to continue parenting time at Growth Works until the earlier of six additional completed sessions or December 31, 2020; Zoom visits on weeks without in-person parenting time; and parenting time outside of Growth Works on the Saturdays following the Growth Works sessions, to be supervised by certain relatives or another mutually agreeable third party. Beginning January 1, 2021, plaintiff was entitled to supervised parenting time every other weekend from noon to 8:00 p.m. on Saturday and 10:00 a.m. to 2:00 p.m. on Sunday. On the weekends without parenting time, plaintiff was entitled to video conference with NB. All parenting-time exchanges were to occur at the Allen Park Police Department until the parties agreed or the court ordered otherwise. The consent judgment also provided that NB's "domicile shall be changed from Michigan to Indiana," subject to the understanding that resolution of plaintiff's criminal case would constitute proper cause and a change of circumstances sufficient to allow either party to move for modification of domicile, custody, and parenting time.

On January 11, 2022, Wayne Circuit Court Judge Regina Thomas found plaintiff not guilty of the criminal charges. In announcing her ruling, Judge Thomas found that defendant was not credible. Relying on the favorable outcome in the criminal case, plaintiff quickly moved to change NB's domicile, custody, and parenting time as permitted by the consent judgment. Plaintiff's motion was first heard by a Friend of the Court referee, who recommended that plaintiff's parenting time no longer be supervised, that plaintiff be given incremental increases in parenting time pending a hearing before the trial court, and that defendant continue to provide transportation for parenting time. The trial court entered the referee's recommendation as an interim order in June 2022. Following a review hearing in August 2022, the trial court ordered that plaintiff's temporary parenting-time schedule be expanded to every other weekend, from Saturday at noon until Sunday at 3:00 p.m.—the first overnight parenting time plaintiff had been afforded since the case began.

A two-day evidentiary hearing on plaintiff's motion was held in January 2023 and March 2023. In an oral ruling on March 21, 2023, the trial court considered the statutory factors in MCL 722.31(4) and MCL 722.23, concluded that plaintiff had met his burden of proof, and outlined a new parenting-time schedule. It later memorialized its decision in a written opinion and order entered April 26, 2023, containing the following language:

> **IT IS HEREBY ORDERED** that the parties shall have joint legal and physical custody of the minor child, with the Plaintiff having physical custody and the minor child's primary residence relocating to Michigan no later than July 1, 2023.

> **IT IS FURTHER ORDERED** that on or before August 1, 2023, the parties shall agree to a Michigan school for the minor child for the 2023-2024 academic school year.

**IT IS FURTHER ORDERED** that prior to July 1, 2023, the Plaintiff shall have parenting time with the minor child every other Saturday morning starting at 10:00 AM until Sunday at 6:00 PM. Defendant shall be responsible for transportation costs.

**IT IS FURTHER ORDERED** that the Plaintiff shall have parenting time with the minor child during Father Day's weekend annually effective June 19, 2023. During this time, the Defendant shall be granted video calls with the child at bedtime.

**IT IS FURTHER ORDERED** that after July 1, 2023, the Plaintiff shall have parenting time with the minor child every other weekend starting from Friday at 6:00 PM EST (after daycare or school) until Monday morning with Plaintiff responsible for transportation costs. Plaintiff shall also have every other Tuesday after daycare or school until Wednesday morning with Plaintiff responsible for transportation costs.

**IT IS FURTHER ORDERED** that the Plaintiff shall be granted video calls with the minor child at bedtime during the week, and specifically on Tuesdays and Thursdays at 7:00 PM EST.

**IT IS FURTHER ORDERED** that the parties shall follow the Wayne County Co-Parenting Plan Holiday and School Break Parenting Time Schedule.

**IT IS FURTHER ORDERED** that prior to August 1, 2023[,] the parties shall consult with the minor child's current physicians for a medical referral for a Michigan physician to continue proper treatment of his burn injuries. If medical appointments are currently scheduled in Indiana, the parties shall not delay said treatment plan and work to secure continuing medical treatment in Michigan when deemed appropriate by current medical professionals.

**IT IS FURTHER ORDERED** that all of the minor child's medical appointments shall be shared between the parties on the 1st day of each month. If any emergencies occur, the parent with physical custody at the time of the emergency must immediately advise the other parent without delay.

**IT IS FURTHER ORDERED** that the Plaintiff and the minor child shall participate in family counseling to promote reunification.

Both parties filed motions on May 3, 2023, with defendant requesting a stay of the proceedings pending an appeal and plaintiff seeking clarification and relief under MCR 2.612. Plaintiff opined that clarification was necessary because the trial court's order failed to specify defendant's parenting-time schedule after NB began school in Michigan, and, presumably, the court intended defendant's parenting time to be limited to every other weekend since midweek parenting time would be impractical in light of the three-hour drive between defendant's residence and the school NB would attend in Michigan. Both motions were scheduled to be heard on June 28, 2023.

Unbeknownst to the parties, however, the trial court entered an amended opinion and order on May 4, 2023, citing MCR 6.435(B) as authority for clarifying the terms of the original order. While the findings in the amended opinion and order were substantively identical in most respects to the court's original opinion and order, the amended opinion and order's conclusions were substantively different. The amended opinion and order concluded with the following:

## CHANGE OF DOMICILE

**IT IS HEREBY ORDERED** that the minor child's legal residence shall be changed to Michigan effective July 1, 2023.

## CUSTODY

**IT IS HEREBY ORDERED** that the parties shall have joint legal and physical custody of the minor child.

## GENERAL CO-PARENTING AND PARENTING TIME PROVISIONS

**IT IS FURTHER ORDERED** that the parties shall adhere to the following provisions:

a) Defendant mother shall have parenting time with the minor child each summer ("Summer Parenting Time is defined as the period between the day school is dismissed at the end of the school year until the day school reconvenes in the Fall").

b) Each summer, the Plaintiff father shall have parenting time with the minor child every other weekend Friday at 7:00 PM until Sunday at 6:00 PM.

c) While Defendant mother is exercising parenting time, Plaintiff father shall be granted liberal video calls with the minor child.

d) During the school year, the Defendant mother shall have parenting time with the minor child every other weekend Friday at 7:00PM until Sunday at 6:00PM.

e) While Plaintiff father is exercising parenting time, Defendant mother shall be granted liberal video calls with the minor child.

f) Unless the parties agree in writing, neither party shall ever have the minor child for three or more weekends in a row. If the ordered parenting time schedule results in such an occurrence, then the parties shall exchange scheduled weekends to prevent this from occurring.

g) On or before August 1, 2023 the parties shall consult with the minor child's current physicians for a medical referral for a Michigan physician to continue proper treatment of his burn injuries. If medical appointments are currently scheduled in Indiana, the parties shall not delay said treatment plan and

work to secure continuing medical treatment in Michigan when deemed appropriate by current medical professionals.

> h) All of the minor child's medical appointments shall be shared between the parties on the 1st day of each month. If any emergencies occur, the parent with physical custody at the time of the emergency must immediately advise the other parent without delay.

> i) Plaintiff father and minor child shall participate in family counseling to promote reunification.

> j) The parties shall follow the Wayne County Holiday Parenting Time Schedule related to Spring and/or Mid-Winter Break and Christmas/Holiday Break (abridged attached).

* * *

**TRANSPORTATION**

> **IT IS FURTHER ORDERED** that the parties are free to select a [sic] one or more designated meeting locations that are equal distant to Plaintiff father's residence in Michigan and the Defendant mother's residence in Indiana, as long as they both agree, in writing.

When the parties appeared for oral argument on their motions on June 28, 2023, the trial court immediately acknowledged that the parties had not received the amended opinion and order before that day because of an oversight in the court's transition to a new "system." The court apologized for the mistake and indicated that it would still hear both motions. Plaintiff opined that his motion was no longer necessary in light of the amended order, while defendant vigorously opposed the amended order, both on procedural grounds and because it dramatically changed the parties' respective parenting time. Without directly addressing the parties' positions regarding the propriety of the amendment, the court acknowledged plaintiff's withdrawal of his motion and denied defendant's motion to stay. A later written order repeated the court's denial of defendant's motion and indicated that plaintiff's motion was moot as a result of the amended opinion and order. This appeal followed.

## II. JURISDICTION

Preliminarily, we address plaintiff's contention that this Court lacks jurisdiction in Docket No. 366008 because the April 26, 2023 opinion and order from which defendant appealed by right was not a final order. We disagree.

This Court has jurisdiction over an appeal of right filed by an aggrieved party from "[a] final judgment or final order of the circuit court . . . as defined in MCR 7.202(6) . . . ." MCR 7.203(A)(1). Relevant to defendant's appeal in Docket No. 366008, a final judgment or final order is defined to include "a postjudgment order that, as to a minor, grants or denies a motion to change legal custody, physical custody, or domicile[.]" MCR 7.202(6)(a)(*iii*). The consent judgment indicated that NB's domicile would be changed to Indiana and granted defendant primary physical

custody. Plaintiff moved to change NB's domicile, custody, and parenting time, and the trial court granted the motion in its April 26, 2023 order. Accordingly, the order appealed in Docket No. 366008 is a final judgment or order under MCR 7.202(6)(a)(*iii*), and defendant's timely claim of appeal vested this Court with jurisdiction under MCR 7.203(A)(1).

## III. STANDARDS OF REVIEW

"In a child custody dispute, 'all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.' " *Pennington v Pennington*, 329 Mich App 562, 569-570; 944 NW2d 131 (2019), quoting MCL 722.28. Whether a trial court properly interpreted or applied a court rule is a question of law. *Henry v Dow Chem Co*, 484 Mich 483, 495; 772 NW2d 301 (2009). In the context of a child custody dispute, such a question is reviewed for clear legal error. See *Pennington*, 329 Mich App at 570. "A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law." *Id*. (quotation marks and citation omitted).

Discretionary rulings, including decisions regarding change of domicile or custody, are reviewed for an abuse of discretion. *Moote v Moote*, 329 Mich App 474, 477; 942 NW2d 660 (2019); *Pennington*, 329 Mich App at 570. "In this context, an abuse of discretion exists when the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Sulaica v Rometty*, 308 Mich App 568, 577; 866 NW2d 838 (2014). Underlying factual findings are "reviewed under the great weight of the evidence standard," *Yachcik v Yachcik*, 319 Mich App 24, 31; 900 NW2d 113 (2017), and "should be affirmed unless the evidence clearly preponderates in the opposite direction," *Moote*, 329 Mich App at 478. To the extent the trial court assessed witness credibility, the court's determination is entitled to deference on appeal. *Id*.

## IV. AMENDMENT OF THE INITIAL ORDER

In Docket No. 366798, defendant's only claim of error concerns the trial court's authority to sua sponte amend its first written order. Because the trial court's amended order substantially changed its decision, as reflected in both its oral ruling and first written order, we agree that it cannot be characterized as correction of a clerical error authorized under MCR 2.612(A)(1) (the civil counterpart to the criminal rule of procedure cited by the trial court).

Although defendant focuses much of her argument on the well-settled rule that a trial court may not modify or amend judgments or orders governed by the Child Custody Act, MCL 722.21 *et seq*., absent a showing of proper cause or change of circumstances, MCL 722.27(1)(c), resolution of this claim of error turns principally on whether the court's amended order corrected a clerical mistake in the first order. The trial court's amended order stated that it was entered pursuant to MCR 6.435(B) to clarify the earlier order. As defendant correctly points out on appeal, the rule cited in the amended order governs criminal proceedings only and, therefore, could not support entry of the challenged order in this family law matter. See MCR 6.001 (describing the scope and applicability of rules in Chapter 6). This flaw in the trial court's amended order is not dispositive, however, because we will not reverse when the trial court reaches the right result for the wrong reason, *Bailey v Antrim Co*, 341 Mich App 411, 420; 990 NW2d 372 (2022), and

defendant acknowledges that an analogous court rule exists within the chapter of the court rules governing civil procedure.

MCR 2.612(A)(1)[2] provides, "Clerical mistakes in judgments, orders, or other parts of the record and errors arising from oversight or omission may be corrected by the court at any time on its own initiative or on motion of a party and after notice, if the court orders it." "The purpose behind MCR 2.612(A)(1) is to make the lower court record and judgment accurately reflect what was done and decided at the trial level." *Central Cartage Co v Fewless*, 232 Mich App 517, 536; 591 NW2d 422 (1998) (quotation marks and citation omitted). In *Central Cartage Co*, for instance, this Court cited MCR 2.612(A)(1) as authority for correcting a judgment that was mistakenly entered against all the defendants after the trial court orally excluded one of the defendants from its ruling. *Id*. at 534, 536. This Court explained that, in that context, correction under MCR 2.612(A)(1) was appropriate so that the written judgment was consistent with "the trial court's intended and orally expressed ruling . . . ." *Id*. at 536.

Here, the trial court first announced its ruling on the record on March 21, 2023. At that time, the court stated that the parties would share joint legal and physical custody, and that defendant was to "relocate [NB] to Michigan" no later than July 1, 2023. Before that date, plaintiff was afforded parenting time every other weekend from Saturday at 10:00 a.m. until Sunday at 6:00 p.m., as well as liberal video calls throughout the week. After July 1, 2023, plaintiff's alternating weekend parenting time was extended to begin at 6:00 p.m., or immediately after daycare or school, on Friday and continue until Monday morning when plaintiff would deliver NB to daycare or school. Plaintiff was also awarded overnight weekday parenting time every Tuesday. The court stated that "[a]ny other parenting time" would be governed by the Wayne County standard schedule "with regard to the infant toddler parenting time policy, summer breaks, holiday, and school break parenting time schedule."

The trial court's April 26, 2023 order largely mirrored its oral ruling, subject to two exceptions. First, in the schedule outlined in the written order, plaintiff was awarded overnight parenting time "every other Tuesday," while the court's oral ruling referenced "every Tuesday." Second, the trial court's oral incorporation of the default county schedule referred to the infant and

---

[2] Subrule (A)(2) controls correction of clerical mistakes after a claim of appeal has been filed, limiting the trial court's ability to "correct errors" by reference to MCR 7.208(A) and (C). MCR 2.612(A)(2). The amended order was signed on May 4, 2023, and entered in the trial court's register of actions as having been issued that day. See MCR 8.119(D)(1)(a) (stating, in part, that the "case history entry of each order, judgment, opinion, notice or other item issued by the court shall be dated with the date of issuance"). Defendant filed her claim of appeal the next day, i.e., May 5, 2023. But it is undisputed that the parties did not learn of the amended order until June 28, 2023, several weeks *after* defendant's claim of appeal was filed. The register-of-actions entry was likewise made on June 28, 2023, but backdated to May 5, 2023. Because defendant does not appear to take issue with this procedural anomaly on appeal, we will approach this issue under MCR 2.612(A)(1). We do not express any opinion as to the timing of the entry, recording, and notice of the amended order.

toddler policy, as well as summer breaks, holidays, and other school breaks, but the written order incorporated only the holiday and school-break schedule.

Comparing these rulings with the trial court's May 4, 2023 amended order, it is apparent that that the trial court did more than correct a clerical mistake in the record when it entered the amended order. The amended order imposed a vastly different parenting-time schedule that did not comport with the schedule the court announced on the record. The trial court's amended order identified one schedule, without reference to the date NB's legal residence was to change to Michigan. That schedule provided that defendant would have parenting time each summer, subject to plaintiff's summer parenting time every other weekend from Friday at 7:00 p.m. until Sunday at 6:00 p.m. But during the school year, defendant would have parenting time every other weekend from Friday at 7:00 p.m. until Sunday at 6:00 p.m. The parties' respective parenting time would remain governed by the standard county parenting-time plan as it related to holidays and school breaks. Under this schedule, for the vast majority of the year, defendant was granted parenting time a mere two overnights in every two-week period, whereas she would exercise parenting time 9 or 10 overnights under the trial court's original ruling, depending on whether plaintiff's midweek parenting time occurred every week or only on alternating weeks. And although the amended order granted defendant most of the summer-break parenting time, that was little more than she would have exercised under the originally-stated schedule.

Inasmuch as nothing in the trial court's oral ruling suggested that it intended this result from the outset, MCR 2.612(A)(1) did not provide authority for the trial court to dramatically alter its original ruling under the guise of correcting a clerical error. Plaintiff characterizes the trial court's amendment as merely adding a "crucial provision inadvertently omitted from the April 26 order—the school-year parenting time schedule." While we agree that the trial court's original ruling would prove impractical during the school year as long as defendant remained living in Indiana, that fact does not alter the obvious procedural error in this case. MCR 2.612(A)(1) allows a trial court to correct clerical mistakes arising from oversight or omission so as to make the written record "accurately reflect what was done and decided . . . ." *Central Cartage Co*, 232 Mich App at 536 (quotation marks and citation omitted). It does not authorize a trial court to reach an entirely different decision upon recognizing that its first ruling was unsound. Because the trial court exceeded the scope of MCR 2.612(A)(1) by altering the substance of its initial order beyond mere correction of a clerical mistake, we vacate the May 4. 2023 amended opinion and order. Accord *People v Comer*, 500 Mich 278; 901 NW2d 553 (2017) (vacating amended judgment of sentence when trial court lacked authority to correct invalid sentence on its own initiative).

## V. CHANGE OF DOMICILE

Turning to Docket No. 366008, defendant challenges the trial court's analysis of plaintiff's request to change NB's domicile. We conclude that any error in the trial court's analysis under the framework applicable to MCL 722.31 was harmless because plaintiff's motion did not actually request a change in legal residence that would implicate that statute, despite the manner in which it was titled.

Requests to change a child's legal residence are governed by MCL 722.31. *Moote*, 329 Mich App at 478-479. Subsection (1) identifies the general rule, stating:

A child whose parental custody is governed by court order has, for the purposes of this section, a legal residence with each parent. Except as otherwise provided in this section, a parent of a child whose custody is governed by court order shall not change a legal residence of the child to a location that is more than 100 miles from the child's legal residence at the time of the commencement of the action in which the order is issued. [MCL 722.31(1).]

Subsection (4) identifies several factors a court must consider "[b]efore permitting a legal residence change otherwise restricted by subsection (1) . . . ." MCL 722.31(4).

This Court has on several occasions described the appropriate analytical process a trial court must follow in considering a motion to change a child's legal residence:

First, a trial court must determine whether the moving party has established by a preponderance of the evidence that the factors enumerated in MCL 722.31(4), the so-called *D'Onofrio* factors,[3] support a motion for a change of domicile. Second, if the factors support a change in domicile, then the trial court must then determine whether an established custodial environment exists. Third, if an established custodial environment exists, the trial court must then determine whether the change of domicile would modify or alter that established custodial environment. Finally, if, and only if, the trial court finds that a change of domicile would modify or alter the child's established custodial environment must the trial court determine whether the change in domicile would be in the child's best interests by considering whether the best-interest factors in MCL 722.23 have been established by clear and convincing evidence. [*Moote*, 329 Mich App at 480, quoting *Rains*, 301 Mich App at 325 (quotation marks omitted).]

Defendant argues that the trial court's change-of-domicile analysis was flawed in a variety of ways, but none of those arguments warrant relief because the relevant proceedings did not, in fact, involve a change of domicile. By dictating that a child has "a legal residence with each parent," MCL 722.31(1) clearly contemplates that the child will have two legal residences. This understanding is further supported by the language of subsection (5), which refers to agreements regarding a change in "*either* of the child's legal *residences*." MCL 722.31(5) (emphasis added). Thus, NB had two legal residences in this case—one in Huntington, Indiana, where defendant resided, and one in Allen Park, Michigan, where plaintiff resided. Although styled as a motion to change domicile, custody, and parenting time, plaintiff's motion did not actually ask the court to permit a change in either of these legal residences in the sense contemplated by MCL 722.31. See, e.g., *Moote*, 329 Mich App at 480 (explaining that a trial court must engage in the four-part analysis discussed above "when a parent moves for leave to change a child's domicile by a distance of more than 100 miles"). Plaintiff did not wish to relocate from Allen Park or to force defendant to relocate from Huntington—the only events that would result in a change of NB's legal residence under MCL 722.31(1). He merely sought expanded parenting time and modification of NB's custody. Because a change in NB's legal residence was never at issue, MCL 722.31 was not

---

[3] *D'Onofrio v D'Onofrio*, 144 NJ Super 200; 365 A2d 27 (Ch Div, 1976).

implicated. Consequently, any error in the trial court's analysis of the proposed "change of domicile" was harmless.

## VI. CREDIBILITY

Defendant next argues that the trial court erred by adopting Judge Thomas's credibility finding from plaintiff's criminal trial rather than independently assessing the parties' credibility. We agree that the trial court failed to independently determine the veracity of defendant's allegations, which constituted clear legal error.

"The Child Custody Act provides a comprehensive scheme for resolving child-custody disputes, including specific procedural requirements and factual findings under MCL 722.27(1)(c) that must be made before a trial court may modify a child's established custodial environment." *Kuebler v Kuebler*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 362488); slip op at 15-16 (citations omitted). Before modifying custody, trial courts are tasked with determining (1) whether the proper-cause or change-of-circumstances threshold for fully considering modification has been met, (2) whether an established custodial environment exists and the effect the proposed change would have on that environment, and (3) whether the proposed change would serve the child's best interests in light of the statutory factors outlined in MCL 722.23. *Id*. at ___; slip op at 16-17. This process is highly fact intensive. As the fact-finder, the trial court was "obligated to determine the weight and credibility of the evidence presented." *Wright v Wright*, 279 Mich App 291, 299; 761 NW2d 443 (2008).

It is well-settled that appellate courts will defer to a trial court's determinations regarding credibility. *Moote*, 329 Mich App at 478. The reason for this rule is obvious: credibility can rarely be accurately determined from a witness's words alone. *Shuler v Mich Physicians Mut Liability Co*, 260 Mich App 492, 519; 679 NW2d 106 (2004). Credibility determinations are influenced by other factors including the witness's "tonal quality, volume, speech patterns, and demeanor," *id*. (quotation marks and citation omitted), the witness's body language, mood, and nonverbal cues, *People v Horton*, 341 Mich App 397, 405; 989 NW2d 885 (2022), and the witness's overall behavior, conduct, and attitude during the proceedings, *People v Kammeraad*, 307 Mich App 98, 141; 858 NW2d 490 (2014). Limited by review of a cold record, appellate courts are necessarily in a poor position to assess these types of factors. For these reasons, deference to the fact-finder's credibility determinations is well warranted on appeal.

While the fact issue that the trial court had before it in this case was the same one that Judge Thomas considered in the criminal proceedings against plaintiff—whether defendant was being truthful when she asserted that defendant pointed a gun at defendant and NB—the trial court was not acting in an appellate capacity, tasked with reviewing the outcome of the criminal case. The questions before the trial court were entirely distinct. As the fact-finder in *this* case, the trial court was "obligated to determine the weight and credibility of the evidence presented." *Wright*, 279 Mich App at 299. It could not abandon that duty by deferring to Judge Thomas's view of defendant's credibility at the criminal trial. To the extent the trial court did so in this case, it amounted to clear legal error.

That said, we are not persuaded that the trial court's error was as pervasive as defendant suggests. The trial court's comments regarding the criminal trial are indeed problematic, but it

does not automatically follow that the trial court completely abdicated its responsibility as fact-finder. The parties' testimonies conflicted with respect to many issues, and the record provides no basis to conclude that the trial court simply accepted plaintiff's version of events every time plaintiff's testimony differed from defendant's testimony based on Judge Thomas's finding that defendant lacked credibility. We are aware of no authority, and defendant has cited none, requiring trial courts to make explicit credibility findings in ruling on a motion to modify parenting time and custody. We will, therefore, focus on the discrete instances in which the trial court clearly incorporated Judge Thomas's credibility determination into its analysis.

The trial court first mentioned Judge Thomas's credibility finding in its discussion of MCL 722.31(4)(e), opining that the domestic-violence factor in the change-of-domicile inquiry was inapplicable because plaintiff was found not guilty as a result of defendant's lack of credibility. Because MCL 722.31 was never implicated in this case for the reasons outlined in Part V of this opinion, the trial court's error concerning this factor was harmless.

The issue next arose in the trial court's analysis of best-interest factor (k), MCL 722.23(k), which likewise concerns domestic violence. Mirroring its position with respect to MCL 722.31(4)(e), the court stated that best-interest factor (k) was "not applicable as the Plaintiff father was found not guilty of domestic violence as Defendant mother's testimony was found to not be credible." The trial court erred by declaring this factor inapplicable based solely on Judge Thomas's credibility determination in the criminal trial without independently evaluating the relevant evidence.

Lastly, in its oral ruling, the trial court expressed "concern" regarding defendant's credibility in the criminal trial and the fact that the criminal charges severely diminished NB's contact with plaintiff during a "very crucial developmental period in his life." Notably, however, the court attributed this concern to best-interest factor (*l*), which was entirely omitted from the court's written opinion and order. "[A] court speaks through its written orders and judgments, not through its oral pronouncements." *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009). Whether by design or neglect, the written order was silent as to best-interest factor (*l*). Under these circumstances, we will not construe the court's comment as error requiring reversal.

## VII. BEST-INTEREST FACTORS

Lastly, defendant takes issue with the trial court's evaluation of the statutory best-interest factors, arguing that most of the court's findings were insufficient, unsupported by the evidence, and did not support its ultimate conclusion that a change in custody was warranted. We agree that the trial court erred with respect to best-interest factors (d), (j), and (k). We further conclude that those errors cannot be deemed harmless on this record, so we vacate the April 26, 2023 opinion and order and remand for further proceedings.

Under MCL 722.27(1)(c), a trial court "shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." Whether characterized as a change in custody or a modification of parenting time "that has the effect of altering the established custodial environment," the moving party bears the burden of proving by clear and convincing evidence that the proposed change is in the child's best interests.

*Kuebler*, __ Mich App at ___; slip op at 17. "To determine a child's best interests, the trial court is required to consider the 12 best-interest factors found in MCL 722.23, applying the appropriate standard of proof." *Id*. at ___; slip op at 17. Although the trial court's initial order failed to identify whether NB had an established custodial environment or how that environment would be affected by plaintiff's proposed changes, it is apparent from the record as a whole that the court found NB's established custodial environment existed with defendant and applied the clear-and-convincing burden of proof to plaintiff's motion. Defendant does not appear to challenge this aspect of the trial court's ruling.

Defendant also does not challenge the trial court's findings regarding best-interest factors (a) (love, affection, and other emotional ties), MCL 722.23(a), which the trial court found to favor defendant slightly; (c) (capacity and disposition to provide food, clothing, medical or remedial care, and other material needs), MCL 722.23(c), which the court found favored the parties equally; or (i) (child's reasonable preference), MCL 722.23(i), which the court did not consider because of NB's young age. Defendant takes issue with the balance of the best-interest factors, arguing that the trial court's findings were factually unsupported and insufficiently detailed.

Concerning the latter point, this Court has explained that "the family court must consider all the factors delineated in MCL 722.23 and explicitly state its findings and conclusions with respect to each of them." *Spires v Bergman*, 276 Mich App 432, 443; 741 NW2d 523 (2007). "The trial court need not necessarily engage in elaborate or ornate discussion because brief, definite, and pertinent findings and conclusions regarding the contested matters are sufficient." *Foskett v Foskett*, 247 Mich App 1, 12; 634 NW2d 363 (2001). In other words, while explicitly stated findings are required, discussion of the evidence is not. *Sinicropi v Mazurek*, 273 Mich App 149, 180; 729 NW2d 256 (2006). Nonetheless, the record created by the trial court must be sufficient to facilitate appellate review. *MacIntyre v MacIntyre (On Remand)*, 267 Mich App 449, 452; 705 NW2d 144 (2005).

Factor (b) addresses "[t]he capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any." MCL 722.23(b). The trial court concluded that factor (b) favored the parties equally, without explanation. Defendant testified that she took NB to church regularly and described the activities he participated in there. Defendant did not believe that plaintiff took NB to church during his parenting time, and plaintiff did not dispute that contention. Plaintiff acknowledged that he did not agree with the creed endorsed by defendant's former church in Michigan and would have had difficulty supporting NB on a spiritual level if NB continued to attend that church. But plaintiff did not offer similar criticisms of NB's Indiana church. To the contrary, plaintiff stated that he would promote NB's religious upbringing if his motion was granted. Based on this evidence, if factor (b) focused only on religious support, defendant's argument that the trial court's finding with respect to factor (b) was against the great weight of the evidence might be well founded. But capacity and disposition to give love and affection are also encompassed by factor (b), and there was ample evidence that plaintiff is a loving and affectionate parent. Even defendant conceded that NB went to parenting time with plaintiff willingly and seemed to enjoy their time together. We are therefore not persuaded that the trial court's finding was against the great weight of the evidence.

Factor (d) addresses "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." MCL 722.23(d). The trial court found that this factor favored the parties equally, again without offering any reasoning for that finding. Proper analysis of this factor requires the trial court to focus on "the environments in which the child has lived in the past and the desirability of maintaining the continuity of those environments." *Demski v Petlick*, 309 Mich App 404, 448-449; 873 NW2d 596 (2015). We agree with defendant that the trial court's finding was contrary to the great weight of the evidence. NB and defendant moved to Indiana in early October 2019, when NB was approximately 20 months old. Since then, NB has resided in the same house with defendant and the maternal grandparents, and the record reveals no concerns regarding the suitability of that environment or obvious reasons that maintaining continuity would not be desirable in this instance. In fact, NB's therapist opined that it would be best for NB to remain in the stable, secure environment to which he had grown accustomed. Although plaintiff continues to reside in the marital home where NB lived before October 2019, it is doubtful that NB would feel the same sense of stability in that setting considering the young age at which he stopped living there. It was not until fall 2022 that the trial court modified the parenting-time schedule in manner that allowed NB to spend more than eight consecutive hours in plaintiff's home, and even then, the single overnight NB spent there every other weekend was vastly outweighed by the time he spent in defendant's household. In the absence of any rational explanation for the trial court's finding regarding factor (d), we conclude that the evidence clearly preponderates against the trial court's finding. Factor (d) should have favored defendant.

Factor (e) addresses "[t]he permanence, as a family unit, of the existing or proposed custodial home or homes." MCL 722.23(e). The trial court found that factor (e) favored the parties equally, but its proffered reasoning plainly does not apply to this factor.[4] Nonetheless, the evidence did not weigh against the trial court's finding merely because NB has not resided with plaintiff for many years. Permanence of the custodial unit is the critical consideration under factor (e). See *Brown*, 332 Mich App at 21. Defendant lived with her parents since October 2019 and intended to purchase their home someday. Defendant noted that NB was quite close to her parents and loved them very much. Inasmuch as NB had lived as a family unit with defendant and her parents for approximately 3½ of his 5 years, the custodial unit in defendant's home was plainly permanent in the sense of MCL 722.23(e). But plaintiff's home was also plainly permanent in the sense of MCL 722.23(e). Plaintiff lived in his home for over 20 years, including for the duration of the parties' marriage and the first 20 months of NB's life, and had no intention of moving. NB's half-sister, with whom all evidence suggests NB was closely bonded, resided there as well while in plaintiff's custody. Even if NB and defendant had not been living there for several years, the family unit consisting of plaintiff and NB's half-sister had a sense of permanency within plaintiff's

---

[4] In its written order, the trial court found that factor (e) favored the parties equally, reasoning: "The Court believes that the injuries sustained by the minor child were accidental, and Defendant mother acted appropriately when she immediately sought medical care for the child. However, the Plaintiff father should have been promptly notified of the accident." It appears that the inclusion of this rationale under factor (e) was a clerical error, as the trial court attributed this reasoning to factor (c) in its oral ruling.

household. We therefore reject defendant's argument that the trial court's analysis of factor (e) suffered from the same flaw that occurred with respect to factor (d).

Factor (f) addresses "[t]he moral fitness of the parties involved." MCL 722.23(f). The trial court found that this factor favored the parties equally because there was no persuasive evidence that either party's parenting was negatively affected by moral factors. Defendant takes issue with this finding, opining that plaintiff lacked moral fitness because he (1) pointed a loaded gun at her and NB and (2) insisted that defendant refer to him as "Lord and Master." "A parent's questionable conduct is relevant to [this factor] only if it is a type of conduct that necessarily has a significant influence on how one will function *as a parent*." *Brown*, 332 Mich App at 22 (quotation marks and citation omitted; alteration in original). Whether the incident with the gun actually occurred remains an open question at this juncture, and, in any event, the evidence on that point is more properly analyzed under the domestic-violence factor, MCL 722.23(k). As to defendant's second argument, plaintiff explained that he instructed defendant to call him "Lord and Master" during a heated text-message exchange in the hope of inserting levity into the situation, and he recognized in retrospect that it was not funny. We fail to understand how a poorly-considered text message, no matter how demeaning to defendant, impairs plaintiff's functioning as a parent. We therefore conclude that the trial court did not err by finding that there was no persuasive evidence relative to factor (f).

Factor (g) addresses "[t]he mental and physical health of the parties involved." MCL 722.23(g). The trial court found that this factor favored the parties equally, as neither party raised concerns with respect to this point. In challenging this finding, defendant merely expresses her own opinion that plaintiff must be "a very sick man," as evidenced by the gun incident. We decline defendant's invitation to endorse the automatic presumption that those who engage in criminal activity suffer from some form of mental illness. The only *evidence* concerning the parties' respective mental health was testimony that each treated with counselors. There was no indication that either party was plagued by poor physical health. The trial court's finding was clearly not contrary to the great weight of the evidence.

Factor (h) addresses "[t]he home, school, and community record of the child." MCL 722.23(h). Citing the trial court's oral ruling, defendant argues that the trial court erred by finding that this factor favored neither party. Defendant's argument lacks merit for one simple reason: in its written order, the trial court found factor (h) slightly favored defendant. Because "a court speaks through its written orders and judgments, not through its oral pronouncements," *In re Contempt of Henry*, 282 Mich App at 678, the written order is controlling on this point. Thus, contrary to defendant's claim of error, the trial court must have recognized that NB's home, school, and community record in defendant's care was positive, such that factor (h) should be credited in her favor.

Factor (j) addresses "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." MCL 722.23(j). The statute goes on to instruct trial courts that they "may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent." *Id*. The trial court found that factor (j) favored plaintiff, without explanation. Defendant questions the factual basis for the trial court's finding in light of the second sentence of MCL

722.23(j) precluding negative consideration of actions taken to protect a child or parent from domestic violence by the other parent. Although the trial court's succinct, unexplained findings with respect to many of the factors—including factor (j)—leave much to be desired, the record with respect to the other factors discussed earlier was fairly clear, often undisputed, and sufficient for this Court to review the trial court's findings under the appropriate standard of review. See *MacIntyre*, 267 Mich App at 452 ("[T]he record must be sufficient for this Court to determine whether the evidence clearly preponderates against the trial court's findings."). The same cannot be said for factor (j), however. The evidence that could have been considered for this factor was too wide spread and dependent on the veracity of the parties as witnesses for this Court to properly review without a more detailed finding from the trial court. Any attempt to review the trial court's finding regarding factor (j) at this time would require an improper level of speculation by this Court.

Additionally, defendant's assertion that the trial court improperly considered her allegations regarding the gun incident bears consideration. There is no doubt that criminal charges stemming from defendant's allegations played a substantial role in the development of this case. The consent judgment granting defendant primary physical custody and affording plaintiff minimal supervised parenting time was seemingly premised primarily, if not exclusively, on the suspicion that plaintiff had committed felonious assault against defendant and NB. In its oral ruling, the trial court expressed concern regarding defendant's credibility in the criminal case and the impact the charges had on plaintiff's contact with NB during a crucial developmental period. While the exclusion of this comment from the written order may be significant, it defies credulity to ignore the obvious fact that the trial court contemplated plaintiff's acquittal and Judge Thomas's credibility determination, even if it later chose not to rely on those considerations. As it stands, we are simply unable to determine whether the trial court's finding regarding factor (j) was erroneous.

Factor (k) addresses "[d]omestic violence, regardless of whether the violence was directed against or witnessed by the child." MCL 722.23(k). The trial court found factor (k) inapplicable because plaintiff was acquitted after Judge Thomas deemed defendant's testimony incredible. For the reasons set forth in Part VI of this opinion, the trial court's finding—premised entirely on Judge Thomas's view of defendant's credibility in the criminal case—amounted to clear legal error because the court should have assessed the credibility of defendant's allegations independently on the basis of the evidence before the court in this case.

Factor (*l*) addresses "[a]ny other factor considered by the court to be relevant to a particular child custody dispute." MCL 722.23. Although the trial court mentioned this factor in its oral ruling as noted earlier, the court did not include factor (*l*) in its written order. Because courts speak through written orders, rather than oral rulings, *In re Contempt of Henry*, 282 Mich App at 678, any error with respect to this factor was harmless.

In sum, the trial court erred with respect to factor (d) because the great weight of the evidence clearly demonstrated that factor (d) favored defendant; the trial court's conclusory finding regarding factor (j) is insufficient for this Court to properly review; and the trial court's finding regarding factor (k) involved clear legal error.

-15-

When a trial court errs in its analysis of the best-interest factors, the appropriate remedy is to remand for further proceedings, unless the error was harmless. *Fletcher v Fletcher*, 447 Mich 871, 882; 526 NW2d 889 (1994). We conclude that the errors in this case cannot be deemed harmless. The trial court's decision was based on findings that best-interest factors (a) and (h) favored defendant, factor (j) favored plaintiff, and all other factors were either equal or inapplicable. Coupled with the trial court's conclusion that plaintiff demonstrated by clear and convincing evidence that a change of custody and parenting time was warranted, we infer that the trial court gave substantial weight to the single factor that favored plaintiff. Because this is the very factor that is not amenable to appellate review on this record, there is no way to accurately evaluate the trial court's error for harmlessness. This is especially true when coupled with the trial court's factually unsupported finding regarding factor (d) and clear legal error regarding factor (k). We therefore vacate the April 26, 2023 opinion and order and remand for further proceedings.

## VIII. CONCLUSION

In Docket No. 366798, we vacate the trial court's May 4, 2023 amended opinion and order. In Docket No. 366008, we vacate the trial court's April 26, 2023 opinion and order and remand for further proceedings. On remand, the trial court should reevaluate its ruling under the appropriate legal framework, taking into account up-to-date information and NB's circumstances as they exist at the time of remand. *Butters v Butters*, 510 Mich 1096, 1097 (2022).

Vacated and remanded for further proceedings. We do not retain jurisdiction.


/s/ Colleen A. O'Brien
/s/ Kirsten Frank Kelly
/s/ Michael J. Kelly